**$217,590.00, IN UNITED STATES CURRENCY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–95–354–CV.**

Court of Appeals of Texas, Corpus Christi.

May 7, 1998.

G. Rudolph Garza, Jr., Corpus Christi, for Appellant.

John Grogan Kearney, Asst. Dist. Atty., Kingsville, Brian Kelly Johnson, Office of the Attorney General, Don Clemmer, Asst. Atty., Gen., Austin, for Appellee.

## OPINION ON MOTION
## FOR REHEARING

YANEZ, Justice.

This is an appeal of a civil forfeiture judgment. On October 10, 1996, upon sustaining the first of appellant's nine points of error, a panel of this Court abated this appeal, in order to have the trial court make findings of fact and conclusions of law necessary to its disposition. The findings and conclusions were filed and received by this Court on November 6, 1996, and on January 27, 1997, appellant filed a supplemental brief in consideration of the findings and conclusions. On October 16, 1997, the same panel of this Court issued a majority opinion, by which the judgment of the trial court was affirmed; Justice Yanez issued a concurring opinion. On December 1, 1997, appellant filed a motion for rehearing and for rehearing *en banc.* We hereby grant appellant's motion and withdraw this Court's original opinions. This is now the opinion of the Court. By eight points of error, appellant challenges the trial court's denial of his plea in bar, its findings that he was not subjected to an illegal detention and arrest, the denial of his motion to suppress evidence, and the sufficiency of the evidence. We reverse and remand.

On April 3, 1994, while patrolling along U.S. Highway 59 in Bee County, Texas, Department of Public Safety (DPS) Trooper Jimmy Moore pulled over a commercial motor vehicle traveling without a tire mud flap. Henry Olvera, appellant, was the driver of the vehicle; his wife and their infant child were discovered to be passengers. Moore questioned Olvera and his wife about the nature of Olvera's cargo and destination, and performed a commercial motor vehicle inspection. Upon conclusion of this inspection, Moore inquired whether any contraband was on board the vehicle. Olvera responded in the negative. Moore, in turn, asked for permission to search the vehicle, and Olvera assented. Moore then called a narcotics-detection dog and its civilian handler to the scene. Upon arrival of the dog and its handler about twenty minutes later, Moore told

Olvera that the dog alerted to the presence of contraband on the tractor portion of the vehicle. Olvera denied the presence of any contraband. Moore instructed Olvera to drive his vehicle to the Bee County Sheriff's Department for a more thorough search, whereupon a paper bag containing $217,590 in United States currency and what were believed to be marihuana cuttings were discovered in the tractor cabin. After *Miranda*[1] warnings were administered, Olvera told DPS Sergeant-investigator James O'Burke that he knew the money was proceeds from drug sales.

On April 20, 1994, the State filed a notice of seizure and intended forfeiture of the $217,590 found in the possession of Olvera on April 3, 1994. On June 2, 1994, the State filed an amended notice of seizure and intended forfeiture. On May 25, 1994, Olvera filed a plea in bar, special exceptions, original answer, and motion for return of the currency. A hearing on the plea in bar was held on June 16, 1994. On July 14, 1994, the court denied the plea. On April 20, 1995, the forfeiture proceeding was tried to the court. On that same day, the court rendered a final judgment of forfeiture to the State of Texas.

By his second point of error, Olvera contends the trial court erroneously denied his plea in bar. Specifically, Olvera argues that the State failed to comply with the thirty-day limitation period of article 59.04 of the code of criminal procedure, in that the original "Notice of Seizure and Intended Forfeiture" did not have the seizing officer's affidavit attached, and Olvera was not served with a certified copy of the notice until after the State amended its petition, which was two months after the date of seizure of the currency. The failure to have fully complied with article 59.04 before the thirtieth day, appellant argues, amounted to a running of limitations which, in effect, deprived the trial court of jurisdiction to consider the State's case. Olvera also argues that the failure to meet the deadline amounted to a substantive defect which could not be cured by amending the petition.

Article 59.04 of the code of criminal procedure provides, in relevant part:

(a) If a peace officer seizes property under this chapter, the attorney representing the state shall commence proceedings under this section not later than the 30th day after the date of the seizure.

(b) A forfeiture proceeding commences under this chapter when the attorney representing the state files a notice of the seizure and intended forfeiture in the name of the state with the clerk of the district court in the county in which the seizure is made. The attorney representing the state must attach to the notice the peace officer's sworn statement under Article 59.03 of this code. Except as provided by Subsection (c) of this article, the attorney representing the state shall cause certified copies of the notice to be served on the following persons.

TEX.CODE CRIM. PROC. ANN. art. 59.04(a), (b) (Vernon Supp.1998). The statute does not mandate or suggest that a forfeiture action must be dismissed if the officer's affidavit is not attached. One court of appeals has held that this specific error can be cured beyond the thirtieth day. *State v. Park*, 820 S.W.2d 948, 951 (Tex.App.—Texarkana 1991, no writ). Furthermore, we have held that the purpose of the notice is to inform the opposing party, and all that is required to be filed within the thirty days is a pleading sufficient to put a defendant on notice of the State's cause of action. *Giddens v. State*, 818 S.W.2d 501, 502 (Tex.App.—Corpus Christi 1991, no writ) (citing *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex.1981)). By citing and tracking the applicable statute in the petition, the State gave notice of its basic theory of recovery, and Olvera suffered no unfair surprise by the State's amended petition beyond the thirtieth day. *See Giddens*, 818 S.W.2d at 502; TEX.R. CIV. P. 47. Point of error two is overruled.

By point of error three, Olvera complains the trial court erred in concluding that Moore had reasonable suspicion for an investigative detention. Olvera contends that once Moore had pulled him over for the missing mud flap, obtained a satisfactory ex-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

planation for its absence, and verified that he (Olvera) had no outstanding warrants, Moore should have issued him a citation and given him permission to leave. Olvera argues that Moore's only basis for keeping him longer was a mere hunch that he was involved with some criminal activity, and a hunch does not amount to the reasonable suspicion for purposes of an investigative detention. By point of error four, appellant claims the trial court erred by not finding that Moore's detention of him after completion of the inspections and examinations amounted to an illegal arrest. The State maintains that Moore had probable cause for stopping Olvera, that reasonable suspicion for further detention developed just after the stop, and that Olvera consented to the search of his vehicle.

■ Searches and seizures generally must occur pursuant to warrants based upon probable cause, U.S. CONST. amend. IV; *Mapp v. Ohio,* 367 U.S. 643, 660, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (incorporating the exclusionary rule aspect of the Fourth Amendment into Fourteenth Amendment limitations upon states); TEX. CONST. art. 1, § 9;[2] and, in general, probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe an offense has been or is being committed. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Hughes v. State,* 878 S.W.2d 142, 154 (Tex.Crim.App.1992). Temporary detentions of persons for the purpose of additional investigation, however, may be justified on circumstances which fall short of probable cause. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Stone v. State,* 703 S.W.2d 652, 654 (Tex.Crim.App.1986). In order to justify such an intrusion upon an individual, the officer must have specific articulable facts, which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion. *Terry,* 392 U.S. at 21, 88 S.Ct. 1868. A DPS officer, however, may detain and enter a commercial motor vehicle on a highway to determine whether the vehicle is in violation of federal safety regulations or regulations for commercial motor vehicles adopted by the State public safety director. TEX. TRANS. CODE ANN. § 644.103(a) (Vernon Supp.1997); TEX.REV.CIV. STAT. ANN. art. 6675d, § 8, *amended by* Act of May 27, 1997, 75th Leg., R.S., ch. 364, § 8, 1997 Tex. Gen. Laws 1504, 1505, *notwithstanding repeal by* Act of May 21, 1997, 75th Leg., R.S., ch. 165, § 30.151, 1997 Tex. Gen. Laws 327, 671.[3]

Moore testified that on the morning of April 3, 1994, while patrolling highway 59 in Bee County, he noticed through his rearview mirror that Olvera kept looking at him after Olvera's and his vehicles passed each other on the highway, heading in opposite directions. Moore testified that in the process of looking at Olvera through his rearview mirror, he noticed Olvera's vehicle was missing its right rear tire mud flap. He decided to pull Olvera over. A video camera in Moore's vehicle recorded the stop, and the videotape is a matter of record. Moore testified that he found it suspicious that Olvera exited the vehicle and came to meet Moore, suggesting to Moore that Olvera did not want him to approach the cabin part of the vehicle. According to Moore, Olvera explained that his vehicle was missing the mud flap because he had a tire blow out a few days earlier and the place that repaired it did not have a mud flap. Moore asked him some questions pursuant to the standard drug interdiction efforts now associated with every DPS stop; Moore also noted that U.S. highway 59 is a known drug-trafficking route. Moore asked Olvera about who he drove for

**2.** Texas courts have interpreted federal and state constitutional provisions regarding unreasonable searches and seizures consistently; and because Olvera has attempted to draw no meaningful distinctions between them in relation to these two points of error, we will consider the implications of the federal and State constitutional provisions to be identical. *See Johnson v. State,* 912 S.W.2d 227, 233 (Tex.Crim.App.1995).

**3.** Section 1.02(a) of Act May 27,1997, 75th Leg., R.S., ch. 165, 1997 Tex. Gen. Laws 327, provides, in part, that the "repeal of a statute by this Act does not affect an amendment, revision, or reenactment of the statute by the 75th Legislature, Regular Session 1997. The amendment, revision, or reenactment is preserved and given effect as part of the code provision that revised the statute so amended, revised or reenacted."

and where he was coming from, and intended to compare those answers with information in the log book that Olvera, as the operator of a commercial motor vehicle, should have been carrying. Moore requested from Olvera a bill of lading and a log book, and the two men then walked toward the front of the vehicle. Once there, Moore discovered that Olvera's wife and infant child were passengers with him. Moore testified that the child was not in a child-restraint seat. Either at this point or after questioning Olvera's wife, Moore testified, he (Moore) initiated a commercial vehicle inspection of the vehicle. Olvera's expert witness, Dr. James Ginger, Jr., testified that the first twenty minutes (only) of the video tape of the stop reflect a commercial motor vehicle inspection being performed by Moore.

According to Moore's testimony, Olvera explained he was returning from a multistate trip and had picked up his wife in Houston, where she stayed while he was on his trip. His home was in Beeville, Texas; thus he was nearly home. Olvera's wife's answers about the trip, Moore testified, were not significantly inconsistent with Olvera's answers. Moore testified that Olvera said he did not keep a log book for this particular trip. Moore also questioned Olvera's wife about her and her husband's trip. Several minutes into the stop, the video reflects the taillights and emergency lights of the vehicle flashing and Moore returning to the rear of the trailer and entering it briefly. Moore testified that the inspection sticker checked out, but that it took some time to match up the paperwork for Olvera's cargo with the cargo in the trailer. Moore testified that Olvera had indicated he picked up the truck in a Wal–Mart parking lot. The video reflects discussion between Moore and Olvera about an apparent problem with the paperwork and Olvera's account of where he picked up this truck. Moore testified that he asked Olvera about a seal with which the trailer would have been secured. The seal was located in the cabin part of the tractor. The video corroborates the question about the seal. Moore testified that he and Olvera eventually got the paperwork to match the load, which the video also corroborates.

Moore further testified that upon completion of the inspection, he did not have probable cause for a search of appellant's vehicle, but that he did believe that illegal activity may have been taking place, based on his questioning of Olvera throughout the stop and vehicle inspection. Moore testified:

[Olvera] came across to be a professional truck driver but he didn't keep any of the required paper work. He didn't know how to read a bill of lading. He picked this trailer up in a parking lot of a Wal–Mart, a bulk-freight carrier; that by itself, raises some questions. And if that in fact were true, a freight-bulk [sic] carrier would have surely put a seal on it to keep the people in that parking lot out of the vehicle. It didn't make sense to me the way that this vehicle was picked up.

Moore testified that he still had probable cause for the mud flap violation, but that he proceeded to ask Olvera for permission to search the vehicle. According to Moore, Olvera responded, "You are talking about the trailer." Moore testified that he replied, "No, sir. I am talking about the tractor and the trailer," and that Olvera responded, "I guess so." The audio portion of the videotape is not clear but essentially corroborates Moore's account of events here.

 Because Moore observed the missing mud flap from Olvera's vehicle, which was a transportation code violation, he was justified in stopping Olvera. *See* TEX. TRANS. CODE ANN. 548.051 (Vernon Supp.1997) (identifying items to be inspected on commercial motor vehicles); TEX.CODE CRIM. PROC. ANN. 14.01(b) (Vernon 1977) (allowing peace officers to arrest person who commits offense within officer's view). Whether suspicions of Moore not pertaining to the mud flap actually motivated the stop is irrelevant, because he had probable cause for arrest. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 1774–75, 135 L.Ed.2d 89 (1996). Moore had the authority to conduct a commercial vehicle inspection. TEX. TRANS. CODE ANN. § 644.103. We hold that particular information Moore acquired from Olvera during both the initial stop and the commercial vehicle inspection gave him reasonable suspicion to detain Olvera for purposes of requesting per-

mission to search the vehicle, to wit: upon being pulled over, Olvera exited the tractor cabin and went to meet Moore; Olvera's explanation that he picked up the bulk-freight vehicle in a Wal–Mart parking lot; that there was no seal on a bulk-freight vehicle that had been picked up in such an open, public place as a Wal–Mart parking lot; Olvera's unfamiliarity with a bill of lading; Olvera's failure to produce a log book upon Moore's request. Points of error three and four are overruled.

By point of error five, Olvera challenges the trial court's conclusion that he gave Moore legally effective consent to search his vehicle. He argues that his "I guess so" response to Moore's request for permission to search the vehicle was inherently equivocal and, in light of the circumstances, merely an acquiescence to a show of authority.

■ One of the specific exceptions to the requirements of warrant for search supported by probable cause is consent to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Juarez v. State*, 758 S.W.2d 772, 775 (Tex.Crim.App.1988). Whether the consent to search was, in fact, voluntary is a question of fact to be determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at

218, 93 S.Ct. 2041; *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App.1996).[4] Before consent can be effective, however, the State must prove, by clear and convincing evidence, that the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex.Crim.App.1997); *DuBose*, 915 S.W.2d at 496.[5] This burden requires the State to show that the consent given was positive and unequivocal and not the result of duress or coercion. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex.Crim.App. 1991). The burden is not discharged if the prosecution does no more than show an acquiescence to a claim of lawful authority. *Paulus v. State*, 633 S.W.2d 827, 850 (Tex. Crim.App.1981); *Neumuller v. State*, 953 S.W.2d 502, 514 (Tex.App.—El Paso 1997, pet. ref'd).

■ Per Olvera's argument, the answer "I guess so," standing alone, may be inherently equivocal, given the meaning of the word "guess." *See* MERIAM WEBSTER'S COLLEGIATE DICTIONARY 517(10th ed.1996) (defining the verb "guess" in three ways: "to form an opinion of from little or no evidence," "BELIEVE, SUPPOSE," or "to arrive at a correct conclusion about by conjec-

4. The Dallas Court of Appeals has held that the following factors are to be considered in determining whether an appellant freely and voluntarily consented: (1) whether, and to what extent, officers exhibited a show of force, including a display of weapons; (2) whether the actions of the arresting officers may be classified as flagrant misconduct; (3) whether the police threatened to obtain a search warrant if the detainee did not acquiesce, or whether the police claimed a right to search; (4) whether the police first gave appellant *Miranda* warnings; (5) whether the arrest was made in order to obtain consent; (6) whether appellant knew that he could refuse the search; (7) whether consent was first offered by appellant or was in response to police request; (8) appellant's age, intelligence, and physical condition; and (9) the proximity of the consent to the arrest, because an intervening time period can provide a degree of attenuation from the taint. *Frierson v. State*, 839 S.W.2d 841, 851 (Tex.App.—Dallas 1992, pet. ref'd).

Factors federal courts have considered in determining the voluntariness of consent include: (1) an individual's knowledge of her constitutional right to refuse consent, *see Schneckloth*, 412 U.S. at 227, 93 S.Ct. 2041; *United States v.*

*Shabazz*, 993 F.2d 431, 438–39 (5th Cir.1993); (2) age, intelligence, education, and language ability, *see Schneckloth*, 412 U.S. at 226, 93 S.Ct. 2041; *United States v. Cooper*, 43 F.3d 140, 144 (5th Cir.1995); (3) the degree to which the detainee cooperates with police, *see United States v. McSween*, 53 F.3d 684, 688 (5th Cir.), *cert. denied*, 516 U.S. 874, 116 S.Ct. 199, 133 L.Ed.2d 133 (1995); (4) the detainee's attitude about the likelihood of discovering contraband, *e.g.*, *United States v. Gonzales*, 79 F.3d 413, 421 (5th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 183, 136 L.Ed.2d 122 (1996); (5) the length of detention and nature of questioning, *see Schneckloth*, 412 U.S. at 226, 93 S.Ct. 2041. No single factor is understood to be dispositive. *Schneckloth*, 412 U.S. at 226, 93 S.Ct. 2041; *Shabazz*, 993 F.2d at 438.

5. By his supplemental brief, Olvera explains that to the extent finding of fact seven addresses the voluntariness of his consent to the search, he now challenges the legal and factual sufficiency of the evidence for support of that finding. We simply will review the court's finding of consent under the "clear and convincing evidence" standard, as per *Bumper* and *Ibarra*.

ture, chance, or intuition"). Yet the response is necessarily equivocal, if at all, only with respect to Olvera's consideration of the wisdom of his answer, not as a response to an officer asking for permission to search a vehicle. The record reflects, however, that, for two reasons, Olvera may not have been aware that he could decline the search. First, up to the point Moore asked for permission to search the vehicle, he had detained Olvera for about twenty minutes. Moore already had been around the vehicle and inside the trailer inspecting them. Only upon concluding the inspection did Moore ask Olvera whether any contraband was on board, indicating suspicion of Olvera for something beyond vehicle safety regulations. Second, Moore, it is undisputed, did not explain to Olvera that he did not have to consent to the search. Moore testified Olvera's right to decline the search was "implied" by his question. Though he had written consent forms available, Moore testified, he did not use one in requesting Olvera's consent. In addition to whether Olvera, under these circumstances, believed he could refuse the search,[6] any suggestion that Olvera's consent was positive and unequivocal to Moore is belied by Moore's own testimony that, upon the dog handler's arrival at the scene of the stop, he told the handler, "[T]his man [Olvera] does not want this vehicle searched." Thus, Olvera's "I guess so" answer was not positive and unequivocal to either himself or Moore. Accordingly, on the basis of the totality of circumstances surrounding the detention of Olvera and search of his vehicle, we hold that the State did not present clear and convincing evidence that Olvera gave legally effective consent to Moore's request for permission to search Olvera's vehicle. Point of error five is sustained.

By our disposition of point of error five, we need not reach point of error six, which challenges the scope of consent given. TEX. R.APP. P. 47.1.

By point of error eight, Olvera challenges the trial court's denial of his motion to suppress all evidence seized on April 3, 1994, in part on the ground that his consent was not legally effective.

■ A trial court's ruling on a motion to suppress will not be disturbed absent an abuse of discretion. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996). Improper application of the law to facts may constitute abuse of discretion. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). We have held that Olvera's consent was not legally effective and that the trial court erred in concluding that it was so.

■ Because Moore admitted that had Olvera declined his request for permission to search, he would have let Olvera go for want of probable cause, the evidence obtained pursuant to the unlawful search was not attenuated from the search and should have been suppressed. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (discussing the "fruit of the poisonous tree" doctrine); *Armstrong v. State,* 550 S.W.2d 25, 31 (Tex.Crim.App.1976); TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 1979). The search resulted in discovery of the currency and Olvera's statements that the currency was "dope money." We therefore cannot say beyond a reasonable doubt that admission of this evidence did not contribute to the judgment of forfeiture. TEX. R.APP. P. 44.2(a). Point of error eight is sustained.

By our disposition of point of error eight, we need not address point of error seven, which challenges the reliability of the dog alert. TEX.R.APP. P. 47.1.

By point of error nine, Olvera challenges the legal sufficiency of the evidence for finding of fact ten and the legal sufficiency of the evidence for the court's conclusions of law numbers two and three. Finding of fact ten reads:

10. The Court found the testimony of Trooper Moore, Sergeant O'Burke, Sergeant Joe Garza, Criminalist James Wal-

---

6. We recognize that there is no requirement that a person be informed of his right to refuse to consent before his consent can be held to be effective. *Paulus,* 633 S.W.2d at 851.

ler, Jr. and Walter Wilburn to be truthful and credible.

Conclusions of law two and three read:

2. The $217,590 U.S. Currency found was monies from the controlled substance [sic] in violation of a felony under Chapter 481, Health and Safety Code (Texas Controlled Substances Act )and therefore contraband as defined in Chapter 59, Texas Code of Criminal Procedure.

3. The $217,590.00 in question should be forfeited to the State of Texas pursuant to Chapter 59, Texas Code of Criminal Procedure.

■ Money is subject to forfeiture if it is derived from or intended for use in manufacturing, delivering, selling, or possessing a controlled substance. TEX.CODE CRIM. PROC. ANN. art. 59.01, 59.02 (Vernon Supp.1998). In forfeiture proceedings, the State must show probable cause for seizing a person's property. TEX. CONST. art. I, § 9; *State v. $11,014.00*, 820 S.W.2d 783, 784 (Tex.1991). In the context of a forfeiture proceeding, probable cause is a reasonable belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute. *$56,700 in U.S. Currency v. State*, 730 S.W.2d 659, 661 (Tex.1987) (quoting *United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319, 323 (5th Cir.1981)); *$11,014.00*, 820 S.W.2d at 784. When considering a question of no evidence, we may consider only the evidence and inferences tending to support the finding and must disregard all evidence and inferences to the contrary. *$11,014.00*, 820 S.W.2d at 784.

■ Finding of fact ten explains that the court found particular testimony credible. Because the matter of witness credibility is within the exclusive purview of the trier of fact, we hold that Olvera's challenge to this finding is meritless. *Investment Prop. Mgmt., Inc. v. Montes*, 821 S.W.2d 691, 694 (Tex.App.—El Paso 1991, no writ).

■ According to Moore's testimony, the currency was found in a hidden compartment inside the cabin of the tractor-trailer Olvera was driving. James O'Burke, a DPS sergeant investigator in the narcotics service, testified that, while speaking with Olvera in the Bee County jail lobby, Olvera said he knew the currency was "dope money." According to O'Burke, Olvera insisted that he had not hauled any drugs or narcotics in the truck, but explained that he received the money from people in a Philadelphia motel, whom he would fear if they learned that he revealed anything about them or his possession of the money. O'Burke further testified that he was to drive the tractor-trailer to a truck stop in Brownsville and leave it there with the keys in it. Someone would transport the vehicle to Mexico, where the money would be removed; the truck would be returned, and Olvera would be notified when he could pick it up. O'Burke also testified that this scenario is consistent with what he has learned about the movement of narcotics or money derived from narcotics in south Texas. We hold that this evidence is of sufficient probative force to support the inference that the currency at issue was derived from the sale or distribution of a controlled substance. The legal sufficiency challenge in point of error nine is overruled.

Accordingly, the judgment of the trial court is reversed and this cause is remanded for proceedings consistent with this opinion.

By our disposition of this appeal, we need not address the factual sufficiency challenge to finding of fact ten in Olvera's ninth point of error. TEX.R.APP. P. 47.1.

Dissenting Opinion by RODRIGUEZ, J.

SEERDEN, C.J., joins in the dissent.

RODRIGUEZ, Justice, dissenting.

Because I believe that, under the totality of the circumstances test,[1] Olvera's consent to search was positive and unequivocal, I dissent from the majority's disposition of points of error five and eight.

Here, the circumstances were such that Olvera's vehicle had already been inspected without objection from Olvera, and some traffic violations found before Moore asked Olvera whether he was carrying drugs or contraband. After Olvera denied having

---

1. Voluntariness of a consent is a question of fact to be determined from the totality of all the circumstances, *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

drugs or illegal contraband, Moore asked if he could search the entire vehicle. Olvera replied, "I guess so." Olvera conceded he consented to the search, but maintained he did not think he had a choice.

The United States Supreme Court specifically held in *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), that knowledge of the right to refuse to consent to a search is not dispositive in determining voluntariness: "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent."

Relying on *Schneckloth*, the Third Circuit Court of Appeals affirmed the trial court's denial of a motion to suppress in *United States v. Kim*, 27 F.3d 947 (3rd Cir.1994). There, the defendant was observed on board an east-bound train from Los Angeles, a route frequently used by drug carriers. The detaining officer asked Kim a few questions and then requested consent to search his luggage. Kim agreed and drugs were discovered. At his criminal trial, Kim moved to suppress the evidence on the grounds that consent was not voluntarily given. *Id.* at 949–50. In affirming the denial, the court emphasized that a defendant's knowledge of the right to refuse is not a talisman for consensual searches, and further noted that the government is not required to advise a defendant of his right to refuse consent before eliciting his consent. *Id.* at 955.

While the majority correctly recognizes Olvera's "I guess so" response is equivocal "if at all, only with respect to [his] consideration of the wisdom of his answer," (Op. at 666) and acknowledges in a footnote that "there is no requirement that a person be informed of his right to refuse to consent before his consent can be held to be effective," (Op. at 667) it is clear to me that in sustaining point of error five, the majority did impose such a requirement. This is evidenced by the majority's extended discussion regarding Olvera's lack of awareness that he could decline the search and Moore's failure to explain to Olvera that he could decline the search.

The majority attempts to bolster the decision to sustain point of error five by reference to Moore's statement to the dog handler that "[T]his man (Olvera) does not want his vehicle searched." I believe the majority has improperly attributed an inflection on this statement that cannot be ascertained from a bare transcription of the words. Moore's statement could have meant Olvera revoked his consent, or that Moore did not perceive Olvera's consent to have been given willingly. However, an equally likely interpretation of the statement is that Moore perceived Olvera knew the vehicle contained contraband and feared he was going to be arrested. Thus, it was improper for the majority to give any weight to Moore's statement. *See generally, Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996) (when circumstantial evidence is relied upon, and the circumstances are equally consistent with either of two facts, no more than a scintilla of evidence exists). Thus, the only real reason for sustaining point of error five is Olvera's asserted lack of knowledge concerning his right to decline the search. From this erroneous conclusion, I must respectfully dissent.

By his eighth point of error, Olvera challenges the legal and factual sufficiency of the trial court's finding that his statements [2] to Sgt. O'Burke were made voluntarily. As in point of error five, Olvera hinges his complaint on the allegation that he was subjected to an illegal search. Olvera contends that at the time he made his statements to Sgt. Burke, he was still being subjected to police misconduct "which permeated and tainted this entire police-citizen encounter at the time the alleged statements were elicited from him."

Because Olvera consented to the search of the vehicle, I would also overrule point of error number eight.

SEERDEN, C.J., joins in the dissent.

---

**2.** Generally, that the currency was drug money which he was instructed to leave in the vehicle at a certain location in Brownsville. Another individual would then drive the vehicle across the border into Mexico.