NUMBER 13-95-354-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


$217,590.00 IN UNITED STATES CURRENCY, Appellant,


v.


THE STATE OF TEXAS, Appellee.

___________________________________________________________________


On appeal from the 343rd District Court of Bee County, Texas.

__________________________________________________________________


OPINION ON REMAND


Before Chief Justice Valdez and Justices Yañez and Castillo

Opinion by Justice Yañez


This case is before this Court on remand from the Texas Supreme Court. We affirm.

Background

On April 3, 1994, while patrolling along U.S. Highway 59 in Bee County, Texas, Department of Public Safety (DPS)
Trooper Jimmy Moore pulled over a commercial motor vehicle traveling without a tire mud flap. Henry Perez Olvera was
the driver of the vehicle, with his common-law wife and their infant child as passengers. Moore questioned Olvera and his
wife about the nature of Olvera's cargo and destination, and performed a commercial motor vehicle inspection. Upon
conclusion of this inspection, Moore inquired whether any contraband was on board the vehicle. After Olvera responded in
the negative, Moore asked for permission to search the vehicle, and Olvera assented. Moore then called a
narcotics-detection dog and its civilian handler to the scene. The dog alerted to the presence of narcotics on the tractor
portion of the vehicle. Moore instructed Olvera to drive his vehicle to the Bee County Sheriff's Department for a more
thorough search, whereupon a paper bag containing $ 217,590 in United States currency and what were believed to be
marihuana cuttings were discovered in the tractor cabin, concealed in the compartment which typically contains an
air-conditioning unit. After Miranda (1) warnings were administered, Olvera told DPS Sergeant-investigator James O'Burke
that he knew the money was proceeds from drug sales.

On April 20, 1994, the State filed a notice of seizure and intended forfeiture of the $217,590, which the State amended on
June 2, 1994. On May 25, 1994, Olvera filed a plea in bar, special exceptions, original answer, and motion for return of the
currency. The court denied the plea in bar following a hearing. On April 20, 1995, the forfeiture proceeding was tried to
the court, and the court rendered a final judgment of forfeiture to the State of Texas.

Olvera filed an appeal, raising nine points of error. Initially, this Court sustained Olvera's first point of error and abated the
appeal in order to have the trial court issue findings of fact and conclusions of law necessary for the disposition of the
appeal. Following the trial court's filing findings of fact and conclusions of law, this Court reversed the trial court's
judgment and remanded the case, holding that Olvera had not given positive and unequivocal consent to the search which
ultimately uncovered the money that was the subject of the forfeiture proceeding. $217,590.00, in U.S. Currency v. State,
970 S.W.2d 660 (Tex. App.-Corpus Christi 1998), rev'd 18 S.W.3d 631 (Tex. 2000). The State appealed to the Texas
Supreme Court, which held that Olvera had voluntarily consented to the search, and reversed and remanded the case for
further consideration by this Court. State v. $217,590.00 in United States Currency, 18 S.W.3d 631 (Tex. 2000). The
supreme court specifically directed us to consider points of error six and seven. Id. at 635-36. According to the supreme
court's opinion, these points raise challenges concerning the scope of Olvera's consent and a "contention that the evidence
was factually insufficient to support the trial court's conclusion that the cash in Olvera's possession was contraband." (2) Id.
at 635.

Although point of error six does raise arguments about the scope of Olvera's consent, point of error seven does not
challenge the factual support for the trial court's conclusion that the cash was contraband, but rather, challenges the trial
court's holding that there was a reliable dog alert which constituted a basis for probable cause to continue searching
Olvera's vehicle. The challenge to the factual sufficiency of the court's conclusion was raised in point of error nine. This
Court disposed of a portion of the arguments raised in point of error nine, but did not address the factual sufficiency
portion. $217,590.00, in U.S. Currency v. State, 970 S.W.2d at 668. Because we are required under the rules of appellate
procedure to address every issue raised and necessary to the final disposition of the appeal, we will address the factual
sufficiency challenge raised in point of error nine, as well as the issues raised in points of error six and seven. See Tex. R.
App. P. 47.1. We will first address Olvera's argument that the dog alert did not constitute probable cause because the dog
was unreliable.

The Reliability of the Dog Alert and Probable Cause

With his seventh point of error, Olvera argues that "the trial court erred in holding that there was a reliable dog alert which
provided the basis for probable cause to continue searching appellant's vehicle." Olvera raised his challenge to the
reliability of the dog alert in a motion to suppress. The hearing on his motion to suppress took place immediately prior to
his trial, and resulted in the trial court denying the motion. 

In a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight
to be given their testimony. Ross v. State, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889,
891 (Tex. Crim. App. 1999); see State v. $217,590.00, 18 S.W.3d at 634 (applying standards developed in criminal cases to
suppression issues raised in a civil case). The judge may believe or disbelieve all or any part of a witness's testimony. Ross,
32 S.W.3d at 955. We afford almost total deference to a trial judge's determination of historical facts that the record
supports, especially when the findings are based on an evaluation of credibility and demeanor. Id. at 856; Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). If the record supports the trial court's evidentiary findings, the reviewing court
is not at liberty to disturb them. State v. $217,590.00, 18 S.W.3d at 634.

During the hearing on the motion to suppress, Olvera produced Dr. Dan Craig as an expert witness on the standards
required for a narcotics detection dog to be properly trained. Dr. Craig concluded that the training of Nemo, the drug dog
involved in searching Olvera's truck had been insufficient. Dr. Craig testified that the methods used by the dog handler to
maintain Nemo's proficiency were insufficient to eliminate false alerts and, in fact, could have trained Nemo to alert based
not on the presence of narcotics, but rather on the presence of the handler and DPS trooper involved in Olvera's stop. (3) Dr.
Craig stated that it was possible that Nemo was influenced by his handler's belief that narcotics were present. Dr. Craig
also stated his belief that the record-maintenance of the dog-handler was inadequate.

The trial court also heard testimony from the dog-handler, Walter Wilburn. Wilburn testified that Nemo was trained to
alert to the odor of narcotics. Wilburn testified that he did not record every search involving Nemo. He also stated that his
record showed that on numerous occasions Nemo alerted and no drugs were found. However, Wilburn stated that because
narcotics can leave a residue which is detectable by a dog's sense of smell, the alerts were not necessarily erroneous.
Wilburn noted that on some of the occasions in which no narcotics were found when Nemo alerted, the odor was noticeable
to him as well as the officer involved, strongly indicating that there had been drugs present shortly before the search.

Trooper Moore testified that he detected the odor of burnt marihuana in the sleeper compartment of the tractor after being
informed that Nemo had alerted on that area of the tractor. (4)

The trial court found that following Olvera's consent to the search, a search was conducted by a "trained dog and handler"
and that the dog was attracted to the smell of narcotics in the cab of the tractor. Despite the testimony of Olvera's expert
challenging the reliability of the dog search, we must defer to the trial court's factual determination that the search was
carried out by a trained dog and handler. See State v. $217,590, 18 S.W.3d at 634 (if the record supports the trial court's
evidentiary findings, the appellate court is not at liberty to disturb them); see also Guzman, 955 S.W.2d at 89 (appellate
court affords almost total deference to trial judge's determination of historical facts that are supported by the record).

Having found that the trial court's factual findings are not erroneous, we now consider the trial court's application of the law
to the facts. Ross, 32 S.W.3d at 856. We review the trial court's application of the law of search and seizure to the facts
under a de novo standard of review. Id. On a question of the application of law to facts, we review the evidence in the
light most favorable to the trial judge's ruling. Amir v. State, 45 S.W.3d 82, 90 (Tex. Crim. App. 2001); Carmouche v.
State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). It is well-settled that a trained narcotics dog's positive alert for drugs is
sufficient to establish probable cause for an arrest. De Jesus v. State, 917 S.W.2d 458, 461 (Tex. App.-Houston [14th
Dist.] 1996, pet. ref'd); Bunts v. State, 881 S.W.2d 447, 450 (Tex. App.-El Paso 1994, pet. ref'd); Walsh v. State, 743
S.W.2d 687, 689 (Tex. App.-Houston [1st Dist.] 1987, pet. ref'd). Because the trial court found that the search was
conducted using a trained narcotics dog, which alerted to the presence of narcotics in the sleeper portion of the tractor, we
hold that trial court did not err in finding the dog alert to be probable cause for the more intensive search of the tractor,
which ultimately uncovered the money at issue in this case. Point of error number seven is overruled.

The Scope of Olvera's Consent

In his sixth point of error, Olvera argues that his consent to a search did not include consent to a search by a narcotics
detection dog and further the "trial court erred in holding that [Olvera's] consent to search included in its scope a consent to
be arrested and taken to the Bee County Sheriff's Department for further searches." The extent of a search is limited to the
scope of the consent given, and the scope of the consent is generally defined by its expressed object. Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997); Vargas v. State, 18 S.W.3d 247, 253 (Tex. App.-Waco 2000, pet. ref'd)
(citingFlorida v. Jimeno, 500 U.S. 248, 251 (1991)). After Olvera gave consent to the search of the tractor and trailer,
Trooper Moore called for a drug detection dog and its handler. The record shows that it was slightly over twenty minutes
before the dog and handler arrived. We do not find that, when a motorist consents to a search, this consent necessarily
includes a search by a drug detection dog. However, in the instant case Trooper Moore testified to factors which would
have justified a dog search absent Olvera's consent. 

A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion
supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of
probable cause. Terry v. Ohio, 392 U.S. 1, 29 (1968); Woods v. State, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997); State v.
Cerny, 28 S.W.3d 796, 800 (Tex. App.-Corpus Christi 2000, no pet.). The reasonableness of a temporary detention must
be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific
articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person
detained is, has been, or soon will be engaged in criminal activity. Woods, 956 S.W.2d at 38; Cerny, 28 S.W.3d at
800;Hernandez v. State, 983 S.W.2d 867, 869 (Tex. App.-Austin 1998, pet. ref'd). If an officer has a reasonable suspicion
that a vehicle contains narcotics, he may temporarily detain it to allow an olfactory inspection by a trained drug detection
dog. Estrada v. State, 30 S.W.3d 599, 603 (Tex. App.-Austin 2000, no pet.). However, although we recognize that a police
office may detain a vehicle to await the arrival of a dog, we stress that the officer must have specific articulable facts that,
under the totality of the circumstances raise a reasonable suspicion that the vehicle contains contraband. A stop based on a
violation of a traffic regulation will not justify detention to await the arrival of a drug detection dog. A detention pending
the arrival of a dog and handler is necessarily a greater imposition on a motorist than conducting a search immediately upon
the arousal of a reasonable suspicion.

In the case now before this Court, Trooper Moore testified that there were several things that made him suspicious after he
pulled Olvera over. First, he noted that Olvera did not wait for Moore to exit his patrol car, but rather immediately stepped
out of the tractor and walked to the back of the trailer. Although Olvera held himself out to be a professional driver, Moore
noted that Olvera was unable to read the bill of lading and did not have a log book in his tractor. Moore testified, and the
videotape from Moore's patrol car shows, that it took him and Olvera about fifteen minutes, and several trips into the trailer
to look at the load, to reconcile the bills of lading with the actual contents of the trailer. 

Olvera's explanation about how he had taken possession of the trailer was also questionable. Olvera told Moore that he had
picked up the trailer in a Wal-Mart parking lot. The trailer was not sealed when Moore stopped Olvera and, Olvera
explained, had not been sealed when he picked it up. Moore found it highly suspicious that a shipping company would
leave a trailer full of freight in a parking lot open to the public, and leave it unsealed, so that its contents would be easily
accessible to anyone who wanted to open the trailer doors. The videotape also shows that Olvera had a difficult time
explaining the locations of his deliveries. Moore testified that he sought to verify the bills of lading by having his
headquarters contact both the shipper and receiver of the freight, but telephone calls to both locations went unanswered. (5) 

Olvera was detained for approximately twenty-two minutes between the time that Moore radioed to summon the dog and
handler, and the arrival of the dog and its handler. (6) We hold that Moore had articulable facts which, under the totality of
the circumstances, justified detaining Olvera for approximately twenty minutes pending the arrival of the drug detection
dog for an inspection of the vehicle. After the dog arrived, it was walked around the outside of the tractor and trailer, and
alerted at the door of the tractor. The dog's alert on the door of the tractor provided probable cause to conduct a search of
the interior of the tractor. See Gutierrez v. State, 22 S.W.3d 75, 85 (Tex. App.-Corpus Christi 2000, no pet.) (citing United
States v. Hernandez, 976 F.2d 929, 930 (5th. Cir. 1992)

Although Olvera also argues that his consent did not extend to the relocation of his vehicle to the Bee County Sheriff's
Department for further searching, Trooper Moore testified that the more detailed searches made at the Sheriff's Department
were the product of probable cause based on the dog's alert, not Olvera's consent. When a dog, which has been trained to
detect concealed contraband or hidden people, alerts in the near presence of a particular vehicle, that action is sufficient to
give rise to probable cause to search that vehicle. Id. Once the dog alerted on the sleeper portion of the truck, Trooper
Moore had probable cause to search the vehicle. See id. Because consent and probable cause are alternative grounds
justifying warrant-less vehicle searches, Trooper Moore did not require Olvera's consent to search the tractor once the dog
had alerted. See id. Point of error number six is overruled.

Olvera's Ninth Point of Error

In his final point of error, Olvera challenged the legal and factual sufficiency of the evidence linking the seized money to a
felony drug transaction. We overruled the legal sufficiency challenge in our original opinion; therefore, we will now
address only the factual sufficiency arguments. See $217,590.00 v. State, 970 S.W.2d at 668.

In our original opinion, we discussed what is necessary for money to be forfeited to the state:

Money is subject to forfeiture if it is derived from or intended for use in manufacturing, delivering, selling, or possessing a
controlled substance. Tex. Code Crim. Proc. art. 59.01, 59.02 (Vernon Supp. 1998). In forfeiture proceedings, the State
must show probable cause for seizing a person's property. Tex. Const. art. I, § 9; State v. $ 11,014.00, 820 S.W.2d 783,
784 (Tex. 1991). In the context of a forfeiture proceeding, probable cause is a reasonable belief that a substantial
connection exists between the property to be forfeited and the criminal activity defined by the statute. $ 56,700 in U.S.
Currency v. State, 730 S.W.2d 659, 661 (Tex. 1987)(quoting United States v. $364,960.00 in U. S. Currency, 661 F.2d 319,
323 (5th Cir. 1981)); $11,014.00, 820 S.W.2d at 784.

Id.

When considering a factual sufficiency challenge to a verdict, we consider and weigh all of the evidence. Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998). We set aside the verdict only if it is so against the great
weight and preponderance of the evidence as to be manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); $136,205.00 (Johnson) v. State, 848 S.W.2d 888, 890-91 (Tex.
App.-Houston [14th Dist.] 1993, no writ). Because the trier of fact is the sole judge of the credibility of the witnesses and
the weight to be given their testimony, we may not substitute our judgment for that of the fact finder. Pool, 715 S.W.2d at
634. The court of appeals is not a fact finder, and may not pass upon the witnesses' credibility or substitute its judgment for
that of the jury, even if the evidence would clearly support a different result. Maritime Overseas Corp., 971 S.W.2d at 407.
Because forfeiture hearings are civil in nature, the burden of proof is a preponderance of the evidence, as opposed to
beyond a reasonable doubt. $136,205.00 (Johnson), 848 S.W.2d at 891. Trooper Moore testified that after the money was
discovered during the search at the Bee County Sheriff's Department, he gave Olvera his Miranda warnings. After being
informed of his rights, Olvera then explained that he had picked up the money in Philadelphia and was to drop it off in
Brownsville, Texas. Moore also testified that he recovered some small pieces of vegetation, which he believed to be
marihuana, from a compartment adjacent to that in which the currency was secreted. A chemist employed by the DPS
confirmed that the material Moore found was marihauna.

James Burke, a sergeant-investigator with the DPS, testified that he also spoke to Olvera, after Olvera had told Moore
about picking up the money in Philadelphia. Olvera admitted to Burke that the money was "dope money." In his
conversation with Burke, Olvera explained that he was to leave his truck, with the keys in it, at a truck stop in Brownsville,
from whence it would be transported by some unknown person to Mexico, the money removed, and the truck returned.
Burke testified that, based on his experience, this is a common method of transporting profits from drug trafficking to
Mexico. Olvera also told Burke that he had met the people for whom he was transporting the money while Olvera was
serving time in prison.

The court also heard testimony from Jose Garza, an investigator with the DPS, assigned to the DPS post-seizure analysis
unit, which specializes in gathering data on narcotics smuggling, based on DPS traffic stops which uncover narcotics.
Garza testified that the facts involved in Olvera's stop were consistent with the methods of transporting money derived
from narcotics sales. Garza stated that to acquire $217,590 would require the sale of approximately 110 pounds of
marihuana, which would constitute a felony under Texas law. (7) 

Along with the testimony of the officers, which was admitted without objection, the record indicates that Nemo alerted on
the money, indicating that it was contaminated with drug residue. See $136,205,00 (Johnson), 848 S.W.2d at 891
(although dog alert alone is factually insufficient to support forfeiture of the money, it is evidence to be considered).
Although Olvera cross-examined the State's witnesses, he presented no testimony or evidence actually countering the
testimony and evidence presented by the State linking the money to drug trafficking.

We hold that the evidence presented to the trial court was factually sufficient to show that a substantial connection exists
between the currency discovered in Olvera's tractor and criminal activity defined by chapter 59 of the Texas Code of
Criminal Procedure. We overrule the remaining portion of point of error number nine.

The judgment of the trial court is AFFIRMED.

 

LINDA REYNA YAÑEZ

Justice





Publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

31st day of August, 2001.

1. Miranda v. Arizona, 384 U.S. 436 (1966).

2. In his appellate brief, Olvera raised nine points of error. As discussed, the first point was sustained, and resulted in the
appeal being abated until the trial court issued findings of fact and conclusions of law. Following the filing of the findings
of fact and conclusions of law, this Court overruled Olvera's second, third, fourth and ninth points or error, sustained
Olvera's fifth and eighth points of error, and did not address his sixth and seventh points of error.

3. Officer Moore had occasionally assisted in training sessions with Nemo by concealing drugs in vehicles used for testing
Nemo's ability to discover concealed drugs.

4. Trooper Moore had not entered the sleeper compartment prior to the search with Nemo.

5. April 3, 1994, the date of this traffic stop, was Easter Sunday.

6. At least some of this time, Moore was also waiting for the results of the efforts to contact the shipper and receiver listed
on the bills of lading.

7. Tex. Health and Safety Code Ann. § 481.120 (c) (Vernon 1992).