

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-14-00152-CR

___

ADRIAN NATIVIDAD AKA ADRIAN NATIVIDAD-SINALOA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

___

On Appeal from the 69th District Court
Moore County, Texas
Trial Court No. 4707, Honorable Delwin McGee, Presiding

___

April 23, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Adrian Natividad aka Adrian Natividad-Sinaloa appeals his conviction for possession of marijuana. Through five issues, he contends that 1) the trial court erred in denying his motion to suppress, 2) his warrantless arrest was illegal, 3) the consent to search form was not supported by clear and convincing evidence, 4) the district attorney withheld exculpatory evidence and 5) he did not receive a fair trial because the district attorney "created" evidence. We affirm.

***Background***

A pre-trial hearing was held on February 14, 2014, in the present cause 4707 and a number of other causes which pertained to appellant. The first motion involved disqualifying or recusing the 69th District Attorney, which motion was denied.[1] A motion to suppress was heard thereafter, and the State called Trooper Lindley with the Texas Department of Public Safety to testify.

Lindley testified that he worked primarily in narcotics investigations and had done so for at least ten years. On June 25, 2010, he began working a case involving Fabian Uribe (Uribe). The latter had been stopped by Trooper Darren Bridges due to a traffic violation. Riding with Uribe was another individual named Elias Pando (Pando). Pando was traveling from Oklahoma when his car malfunctioned, and Uribe met Pando to collect Pando and the car. As the two were travelling back to Uribe's house, Bridges made the traffic stop.

During the stop, Bridges "discovered a fairly large size - - amount of currency," being transported. The amount approximated $24,800. This discovery resulted in a drug dog being called to the scene and alerting to the presence of drugs on the cash. Apparently, no drugs were found, though. Lindley arrived on the scene after the drug dog alerted, and the circumstances, which included the discovery of a driver's license with Uribe's address on it, led him to travel to the address on Uribe's license to conduct additional investigation. Uribe told Lindley that his (Uribe's) twenty-two year old nephew lived at the abode, and Lindley had begun to suspect that he would find a "stash house" at the address.

---

[1] Apparently, the trial judge initially presiding over the matter recused himself and filed a grievance against appellant's legal counsel.

2

Three other law enforcement officers joined Lindley at Uribe's house. Upon their arrival at 3:30 a.m., they walked to the front door, knocked, and waited for a response. Appellant opened the door. At that point and while still standing outside, the officers smelled the "overwhelming" odor of "green marijuana" coming from inside, noticed that the rooms they could see from the doorway had no furniture, and saw three large bundles about ten to fifteen feet from the door. One trooper immediately recognized the bundles to be marijuana. So too did they see appellant attempt to shut the door. As he did, the officers seized and brought him outside. Because they knew that danger and weapons often accompanied drugs, several troopers decided to enter the abode and perform a security sweep. No one else was found in the house. But, as they exited they saw "chunks" of marijuana lying next to the bundles "in plain view."

While outside, appellant was asked for and gave consent to search the residence. He also executed a consent form written in Spanish. Thereafter, the law enforcement officials re-entered the house and seized the marijuana.

Because the search was conducted without a warrant, appellant moved to have evidence of the contraband suppressed. The motion was denied by the trial court after conducting an evidentiary hearing. That eventually led to appellant being tried and convicted for possessing between 50 and 2,000 pounds of marijuana.

### *Issues One, Two and Three – Denial of Motion to Suppress*

We initially address the three issues encompassing the warrantless seizure of appellant, search of the house, and the denial of appellant's motion to suppress. Frankly, appellant's brief is quite rambling, and he fails to denote which issue he attempts to address at any particular time. Nonetheless, it appears that he believes the

3

troopers lacked reasonable suspicion or probable cause to arrest him, that the consent form he executed was invalid because it was "not voluntary, was not effective, and consent occurred approximately 45 minutes after a protective sweep of the Appellant's residence," and the officers failed to properly execute an affidavit to justify a warrantless arrest. That is, the "probable cause affidavit" of DPS trooper Lindley fails to meet the requirements of the Fourth and Fourteenth Amendments to the Constitution of the United States of America and Article 1, § 9 of the Texas Constitution. We overrule the issues.

The pertinent standard of review is discussed in *Turrubiate v. State,* 399 S.W.3d 147 (Tex. Crim. App. 2013). We apply it here. And, irrespective of whether the trial court has made express conclusions of law, we must uphold the trial court's ruling under any theory supported by the facts since conclusions of law are reviewed *de novo*. *Alford v. State,* 400 S.W.3d 924, 929 (Tex. Crim. App. 2013). Finally, "a trial court's ruling will not be reversed based on a legal theory that the complaining party did not present to it." *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014). [2]

Regarding the arrest of appellant, an officer may arrest someone without a warrant if he has probable cause to believe a crime occurred in his presence. *See Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Probable cause arises when an officer has knowledge of facts that would lead a reasonable person to believe that the suspect has committed a crime or will soon do so. *State v. Story*, 445 S.W.3d

---

[2] Normally, review of decisions like that at bar is restricted to the record developed at the suppression hearing, unless the issue is re-litigated at trial. *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000). However, both appellant and the State referred to evidence tendered during trial to also support their respective positions on appeal, and neither litigant objected to the other doing so. This may be because they considered the matter re-litigated at trial. Thus, we also cite to the record developed at trial in reviewing the issue.

4

at 733; *Turrubiate v. State*, 399 S.W.3d at 151 (stating that probable cause "exists when reasonably trustworthy circumstances within the knowledge of the police officer on the scene would lead him to reasonably believe that evidence of a crime will be found."). And, in determining whether probable cause exists, we look to the collective knowledge of the officers involved. *Williams v. State*, 440 S.W.3d 717, 720 (Tex. App.—Amarillo 2013, no pet.). Here, the record disclosed that the officers knew that Uribe and Pando were traveling, in the middle of the night, to Uribe's house with $24,800 cash. When the officers knocked on the door of Uribe's house and appellant opened it, they immediately smelled and saw bundles of marijuana within feet of the doorway. These circumstances would lead a reasonable person to believe that appellant was committing the crime of possessing a controlled substance. Thus, he was susceptible to arrest without a warrant. So, their removal of appellant from the house as he tried to close the door, placing him in handcuffs, and preventing him from leaving could be viewed as a legitimate detention.

Regarding the improper execution of an affidavit to support the warrantless arrest, the argument was not raised below.[3] Thus, it cannot be used as a basis for reversal. *State v. Story, supra*.

Regarding appellant's consent to search, the record disclosed that appellant was handcuffed upon being removed from the house, was twenty-two years old at the time, spoke Spanish, and executed a written form granting the troopers permission to search the house. The form was in Spanish and explained to him in that same language by a

---

[3] We know of no authority requiring a law enforcement officer to execute a "probable cause affidavit" before conducting a warrantless search. Nor did appellant cite us to such authority. So, the argument was inadequately briefed and waived, in any case. *McGee v. State*, 342 S.W.3d 245, 247-48 (Tex. App.—Amarillo 2011, pet. ref'd).

5

sheriff's deputy at the scene who spoke fluent Spanish. During the exchange, appellant was told of his right to refuse consent and deny permission to search. However, the deputy could not recall when appellant was informed of his *Miranda* rights. Yet, appellant not only appeared to understand what he was told, according to the deputy, but was also afforded opportunity to ask questions. No questions were asked by appellant. Nor was appellant interrogated by the deputy, who apparently happened to be the only person capable of communicating with appellant in Spanish. And, while four law enforcement officials were at the scene when consent was sought, none had their guns drawn. Furthermore, two were in plain clothes.

The record contains no evidence of appellant being coerced to sign the document. Indeed, he represented, via the document, that his consent was not the result of coercion. Nor does the record indicate that appellant objected to his detention or the search in any way.

Finally, the form was signed within an hour of appellant's detention, though the record is unclear on whether consent was verbally requested prior thereto. And, it must be remembered that the officers had probable cause to detain appellant indefinitely given the evidence of his committing a crime in their presence (as previously explained).

One's consent to search must be voluntary. *Veleta-Hernande v. State*, No. 07-10-00460-CR, 2012 Tex. App. LEXIS 3099, at *4-5 (Tex. App.—Amarillo April 19, 2012, no pet.) (mem. op., not designated for publication). Furthermore, whether it is voluntary is a question of fact that the State must prove by clear and convincing evidence. *Id.* Many indicia are considered in assessing the matter and include 1) whether the police displayed weapons or used physical force or other intimidating tactics, 2) whether the

6

police engaged in misconduct, 3) whether the police asserted a right to search, 4) the degree to which the detainee cooperated with the search, 5) the detainee's age, intelligence, education, and physical condition, 6) the detainee's attitude about the likelihood of discovering contraband, 7) the length of detention and the nature of the questioning, 8) whether the police administered *Miranda* warnings, and 9) whether the detainee was aware of the right to refuse consent. *State v. $217,590.00 In U.S. Currency*, 18 S.W.3d 631, 634 (Tex. Crim. App. 2000). Yet, no single factor is dispositive. *Id.* Applying the indicia mentioned in *$217,590 in U.S. Currency* to the record before us and considering the evidence in a light most favorable to the trial court's finding, we conclude that the trial court's implicit finding that consent was voluntary is not clearly erroneous.[4] *See Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011) (stating that because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness "must be accepted on appeal unless it is clearly erroneous.").

Contrary to appellant's suggestion, consent given after a search was conducted does not alone render consent involuntary. *See Phelper v. State*, 396 S.W.2d 396, 397-99 (Tex. Crim. App. 1965) (wherein the defendant argued that the consent was improper because it was coerced and secured after the search and the Texas Court of Criminal Appeals upheld the jury's finding that it was voluntary). Additionally, the sweep conducted by the troopers was protective in nature. *See Reasor v. State,* 12 S.W.3d 813, 816-17 (Tex. Crim. App. 2000) (stating that a limited protective sweep may be conducted in conjunction with an in-home arrest when the officer possesses an

---

[4] When there are no written findings explaining the basis for the trial judge's decision like here, we imply findings of fact that support his ruling so long as the evidence supports those implied findings. *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011).

7

objectively reasonable belief, based on specific and articulable facts, that a person in that area poses a danger to that police officer or to other people in the area and the sweep must stay within the appropriate scope and be no longer than necessary to dispel the reasonable suspicion of danger). They knew from their multiple years of experience in law enforcement and narcotics investigation that drug trafficking, guns, and danger went hand-in-hand. *See Plummer v. State*, 410 S.W.3d 855, 859 (Tex. Crim. App. 2013) (recognizing that firearms are often present when drug trafficking occurs). So, a protective sweep was undertaken to secure the area and ameliorate such danger. The time spent doing that sweep was described by the deputy as "in and out." Those circumstances coupled with the evidence previously discussed (including the time lapse between the detention, sweep and execution of consent) also continue to sway us that the trial court's finding of voluntariness was not clearly erroneous.

### *Issue Four – Withholding Exculpatory Evidence*

Next appellant contends that:

> [t]he [S]tate violate[d] the Brady Rule as the 69th district attorney [withheld] information from Appellant's attorney to the detriment of the Appellant. The State denie[d] the Appellant his constitutional right to confront DPS trooper Gary Walsmith who is the person claiming to see the marijuana in the darkness of the Appellant's home. The State [withheld] exculpatory evidence and [did] not produce the person of Fabian Uribe or Elias Pando for testimony.

We overrule the issue.

As mentioned by our Court of Criminal Appeals, "*Brady* held that the State has a constitutional duty to disclose to a defendant material, exculpatory evidence." *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011). "The scenarios to which *Brady* applies 'involve[] the discovery, after trial of information which had been known to the

8

prosecution but unknown to the defense.'" *Id.*, *quoting, United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). Additionally, "the State does not have such a duty if the defendant was actually aware of the exculpatory evidence or could have accessed it from other sources." *Id.* Finally, ". . . [a]ppellant must also show that the evidence withheld by the State was 'favorable' to his case," and "[f]avorable evidence is that which, if disclosed and used effectively, '*may* make the difference between conviction and acquittal.'" *Id.* at 811-12, *quoting United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). (Emphasis in original).

The record reveals that appellant knew of Trooper Walsmith and his involvement in the detention, arrest and search of the house before trial. So too does it illustrate that appellant knew of Uribe and Pando and their involvement in the cause before trial. More importantly, in his extended diatribe, appellant fails to discuss to what those purported witnesses would have testified or how their testimony constituted the difference between conviction and acquittal. Consequently, he failed to establish a *Brady* violation.[5]

Appellant also argued that he "has the constitutional right to confront his arresting officers; and the prosecutor has a duty to insure that he is available for the trial." The "arresting officer" in question was Walsmith. Walsmith did not testify at trial, though appellant may have wanted to examine him. And, other than the conclusory statement we quoted, appellant failed to explain his argument or cite legal authority supporting the proposition that the State must make available to a defendant at trial all witnesses he

---

[5] Appellant also argued that "the prosecutor withheld exculpatory evidence concerning the lack of a probable cause affidavit from the arresting officer Tommy J. Lindley." Apparently, this is the same affidavit to which we alluded previously. Appellant does not cite us to its location in the record. Nor did our search of the record uncover it. Nor does he discuss how it contained evidence favorable to him. Thus, he again failed to illustrate that it somehow was implicated in a *Brady* violation.

9

cares to confront. So, at the very least, the contention was waived due to inadequate briefing. *See McGee v. State,* 342 S.W.3d 245, 247-48 (Tex. App.—Amarillo 2011, pet. ref'd) (stating that argument is waived when conclusory and unaccompanied by citation to legal authority).

### *Issue Five – Due Process and Selective Prosecution*

Via his final issue, appellant argued:

The Appellant is denied a constitutional right to due process as the prosecutor creates additional evidence to open the door for extraneous offenses to enhance state's case for punishment. The Appellant argues that he is victim of selective prosecution and is persecuted because attorney Hall is Appellant's attorney of record. The Appellant is indicted on August 9, 2013 without a probable cause affidavit and no arrest warrant is provided for the Appellant's "alleged" October 10, 2013 for tampering with a government document based on an investigation that 'allegedly' began on or about August 22, 2013 or July 8, 2013 as the testimony of Vogel changes from certainty to lack of recollection throughout his (Vogel) testimony during the punishment phase of the Appellant's jury trial on April 8, 2014.

This is contained in the "summary" of his issues and unaccompanied by citation to authority and legal analysis elsewhere in his brief. Thus, the matter was and is overruled due to inadequate briefing. *See McGee v. State, supra.*

Having overruled each issue, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice

Do not publish.

10