The STATE of Texas, Petitioner,

v.

$217,590.00 IN UNITED STATES
CURRENCY, Respondent.

No. 98–0582.

Supreme Court of Texas.

Argued Sept. 8, 1999.

Decided April 13, 2000.

Rehearing Overruled May 25, 2000.

Brian Kelly Johnson, John Cornyn, Don J. Clemmer, Austin, George P. Morrill, II, Beeville, for Petitioner.

G. Rudolph Garza, Jr., Corpus Christi, for Respondent.

Justice O'NEILL delivered the opinion of the Court.

This case involves the forfeiture of $217,590 allegedly derived from illegal drug trafficking. *See* Tex.Crim. Proc.Code art. 59.01–.08 (the "civil forfeiture statute"). We must decide whether the claimant, Henry Perez Olvera, voluntarily consented to the search that revealed the money and the evidence linking it to criminal activity. In doing so, we decide the standard appellate courts must apply in civil forfeiture proceedings to review a trial court's disposition of a motion to suppress evidence allegedly obtained as the result of an illegal search.[1] We hold that whether a claimant voluntarily consented to a search is a mixed question of law and fact reviewable for an abuse of discretion. In applying this standard, we defer to the trial court's factual findings if they are supported by the evidence. But whether the trial court properly applied the law to the facts is a question of law for the appellate courts to decide.

Applying this standard, we conclude that the trial court did not abuse its discretion in denying Olvera's motion to suppress, and that the court of appeals misapplied the totality of the circumstances test in holding that Olvera's consent was not voluntary. *See* 970 S.W.2d 660, 667. Be-

cause it held that Olvera's consent was not voluntary, the court of appeals did not consider Olvera's points of error concerning the scope of that consent and his contention that the evidence was factually insufficient to establish that the money was linked to a felony drug transaction and therefore subject to forfeiture. Accordingly, we reverse the court of appeals' judgment and remand this case to the court of appeals to allow it to consider Olvera's remaining points.

## I

### Background

While patrolling U.S. Highway 59 in Bee County, Texas, Department of Public Safety Trooper Jimmy Moore stopped a commercial tractor-trailer driven by Olvera that was missing a mud flap. Olvera's wife and infant child were riding with him, even though they were unauthorized noncommercial passengers. Moore questioned Olvera about the missing mud flap and began a commercial motor vehicle inspection of the trailer and its cargo.[2] During the inspection, Moore questioned Olvera and his wife about the truck's cargo and their trip. Moore's suspicions became aroused for a number of reasons. First, Olvera was unable to produce the logbook that commercial vehicle drivers are normally required to maintain. In addition, Olvera said that he had picked up his load in a Wal–Mart parking lot, even though the trailer's seal was displaced. Moore thought it unlikely that a shipper would

---

1. Evidence obtained as the result of an unreasonable search and seizure is subject to exclusion in a criminal proceeding. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Polk v. State,* 738 S.W.2d 274, 276 (Tex.Crim.App.1987); *see also* Tex.Crim. Proc.Code art. 38.23(a) (codifying and expanding the exclusionary rule). We have never decided whether the exclusionary rule applies to civil forfeiture proceedings. *See* $4,182 v. State, 944 S.W.2d 24, 27 (Tex.App.—Texarkana 1997, no writ) (assuming without deciding that the exclusionary rule applied in civil forfeiture proceeding); *$56,700 v. State,* 710 S.W.2d 65, 70 (Tex.App.—El Paso 1986) (indicating that the exclusionary rule would apply unless "the deterrent effect [is] satisfied by other means, thereby leaving no reason to exclude the evidence in a civil action."), *rev'd on other grounds,* 730 S.W.2d 659 (Tex.1987). Because both parties in this case presume the exclusionary rule's application, we will assume without deciding that the rule applies.

2. The Texas Transportation Code allows a DPS officer to detain and enter a commercial motor vehicle on a highway to determine whether the vehicle is in violation of federal or state safety regulations. *See* Tex. Transp. Code § 644.103.

leave an unsealed trailer in a public area. Finally, Olvera did not seem to understand the bill of lading for the vehicle's freight.

After discovering these apparent irregularities, Moore asked Olvera whether he was transporting any contraband. Olvera responded that he was not. Moore, aware that illegal drugs are frequently transported on Highway 59, was unconvinced and asked if he could search the tractor and trailer. Olvera answered, "I guess so." Moore had written consent forms with him, but testified he did not use them because the stop was being videotaped. The videotape of the stop is part of the record.

Moore then called for a narcotics dog and handler. When they arrived about twenty minutes later, Moore remarked to the handler that "[t]his man … does not want this vehicle searched." The dog was led around the truck and alerted to the presence of drugs. Moore instructed Olvera to follow him in the truck to the Bee County Sheriff's Office, where the dog again alerted to the presence of drugs. While searching the tractor cabin, Moore noticed that several screws were missing from a plywood panel in the sleeper area. He removed the panel and found a compartment where the air-conditioning unit should have been. Inside the compartment he found a grocery sack containing $217,590 in cash. He also found marijuana residue in a box adjacent to the compartment. Olvera was given *Miranda* warnings, after which he admitted that the money represented proceeds from drug sales. The police seized the money, and the State initiated this forfeiture proceeding.

Olvera moved to suppress all evidence and statements obtained as a result of the search, arguing that he did not freely and voluntarily consent to the search as he contends is required by the federal and state constitutions in the absence of a search warrant. The State defended the search's legality, claiming that Olvera voluntarily consented. After hearing evidence, the trial court found that Olvera "orally and voluntarily consented to the search," and granted forfeiture. A divided *en banc* court of appeals reversed, holding that the State failed to establish by clear and convincing evidence that Olvera voluntarily consented to the search. *See* 970 S.W.2d at 667. Specifically, the court concluded that Olvera's consent was not clear and unequivocal because there was evidence he may not have known that he could decline the search. *See id.* Accordingly, the court of appeals held that the money and all evidence linking it to criminal activity should have been excluded as fruits of an illegal search. *See id.*

## II

### Standard of Review

 We have never defined the standard appellate courts should apply in reviewing a trial court's determination that a person's consent to a search was or was not voluntary, and thus whether evidence obtained from the search may be subject to exclusion. Whether a consent to search was voluntary under the totality of the circumstances involves questions of both fact and law. The first part of the analysis involves a determination of the historical facts leading up to the consent. The second part involves assessing whether the trial court's findings demonstrate voluntariness under the totality of the circumstances, which is a question of law. We review a trial court's decision on a mixed question of law and fact for an abuse of discretion. *See Brainard v. Texas*, 12 S.W.3d 6, 30 (Tex.1999). Accordingly, we hold that an abuse of discretion standard of review applies to a trial court's ruling on a motion to suppress evidence based upon the contention that a claimant's consent to a search was not voluntary.

 In applying the abuse of discretion standard, reviewing courts defer to the trial court's factual determinations; a reviewing court does not engage in its own factual review, but decides whether the record supports the trial court's resolution

of factual matters. *See Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997); *cf. Gibbs v. State,* 819 S.W.2d 821, 830–31 (Tex. Crim.App.1991) (observing that appellate courts defer to trial courts' resolutions of fact issues in suppression hearings); *Segura v. State,* 826 S.W.2d 178, 181 (Tex. App.—Dallas 1992, pet. ref'd) (noting that the trial court is judge of a suppression hearing witness's credibility and weight to be given testimony). If the record supports the trial court's evidentiary findings, the reviewing court is not at liberty to disturb them. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). A reviewing court instead determines only whether the trial court properly applied the law to the facts in reaching its legal conclusion. *See id.; Segura,* 826 S.W.2d at 181.[3]

The underlying historical facts preceding Olvera's consent are undisputed, perhaps because the encounter between Olvera and Moore was videotaped. Accordingly, we decide whether the trial court properly applied the governing constitutional principles to the undisputed facts.[4]

## III

### Voluntariness of Consent

Courts have identified a number of factors to be considered in determining whether a person voluntarily consented to a search, including, but not limited to: (1) whether the police displayed weapons or used physical force or other intimidating tactics, *see United States v. Wyatt,* 179 F.3d 532, 535 (7th Cir.1999); *Frierson v. State,* 839 S.W.2d 841, 851 (Tex.App.— Dallas 1992, pet. ref'd); (2) whether the

police engaged in misconduct, *see United States v. Cherry,* 759 F.2d 1196, 1211 (5th Cir.1985); *De Jesus v. State,* 917 S.W.2d 458, 462 (Tex.App.—Houston [14 Dist.] 1996, pet. ref'd); (3) whether the police asserted a right to search, *see Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Dawson v. State,* 868 S.W.2d 363, 368 (Tex.App.— Dallas 1993, pet. ref'd); (4) the degree to which the detainee cooperated with the search, *see United States v. Cooper,* 43 F.3d 140, 147 (5th Cir.1995); *Frierson,* 839 S.W.2d at 851; (5) the detainee's age, intelligence, education, and physical condition, *see Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Dawson,* 868 S.W.2d at 368; (6) the detainee's attitude about the likelihood of discovering contraband, *see, United States v. Gonzales,* 79 F.3d 413, 421 (5th Cir.1996); (7) the length of detention and the nature of the questioning, *see id.* at 226; (8) whether the police administered *Miranda* warnings, *see id.;* and (9) whether the detainee was aware of the right to refuse consent, *see Schneckloth,* 412 U.S. at 226–27, 93 S.Ct. 2041; *Allridge v. State,* 850 S.W.2d 471, 493 (Tex.Crim.App.1991).

No single factor is dispositive. *See United States v. Morales,* 171 F.3d 978, 983 (5th Cir.1999); *Arcila v. State,* 788 S.W.2d 587, 591 (Tex.App.—Dallas 1990), *aff'd,* 834 S.W.2d 357 (Tex.Crim. App.1992), *overruled on other grounds by Guzman,* 955 S.W.2d 85. Instead, courts must consider the totality of the circumstances. *See Schneckloth,* 412 U.S. at 227,

---

**3.** These standard of review principles are similarly applied in criminal cases. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997) (affording deference to trial court's historical facts determination and "application of law to fact" questions that turn on questions of credibility and demeanor; mixed questions that do not turn on evaluation of credibility and demeanor are reviewed de novo); *Combest v. State,* 981 S.W.2d 958, 960 (Tex.App.—Austin 1998, pet. ref'd) (applying *Guzman* standard of review to the voluntary consent issue).

**4.** The court of appeals indicated that the State was required to prove that Olvera's consent was voluntary by clear and convincing evidence. 970 S.W.2d at 666. Because we conclude that the evidence in this case supporting the trial court's decision meets the "clear and convincing" standard, we do not decide whether the lesser preponderance standard applies to the voluntary consent issue in Chapter 59 forfeiture proceedings.

93 S.Ct. 2041; *Meeks v. State,* 692 S.W.2d 504, 510 (Tex.Crim.App.1985).

Ignoring these countervailing factors, the court of appeals concluded that Olvera's consent was .not voluntary because "Olvera may not have been aware that he could decline the search [because] Moore already had been around the vehicle and inside the trailer [and] did not explain to Olvera that he did not have to consent to the search." 970 S.W.2d at 667. It is well-established, however, that knowledge of the right to withhold consent, although an important factor, is not dispositive. *See Schneckloth,* 412 U.S. at 226–27, 93 S.Ct. 2041; *United States v. Galberth,* 846 F.2d 983, 989 (5th Cir.1988); *Meeks,* 692 S.W.2d at 510. By focusing solely on that factor, the court of appeals effectively imposed a requirement upon law enforcement officers to inform suspects that they have a right to refuse consent to a search, a requirement that the United States Supreme Court has expressly rejected as "thoroughly impractical." *Schneckloth,* 412 U.S. at 231, 93 S.Ct. 2041. Because the court of appeals did not meaningfully analyze the evidence relating to other factors bearing on the issue of voluntariness, it misapplied the totality of the circumstances test.

■ The court of appeals attempted to bolster its conclusion that Olvera's consent was not voluntary with Moore's statement to the dog handler that "[t]his man ... does not want this vehicle searched." 970 S.W.2d at 667. But Moore testified that, despite this statement, he believed Olvera's consent was voluntary, and the trial court specifically found that Moore's testimony was credible. That finding indicates the trial court likely interpreted Moore's statement as his perception that Olvera knew the vehicle contained contraband and did not want it to be discovered, rather than an indication that Olvera's consent was not voluntary. *See id.* at 669 (Rodriguez, J., dissenting); *see also United States v. Gonzales,* 842 F.2d 748, 755 n. 3 (5th Cir.1988), *overruled on other grounds by United States v. Hurtado,* 905 F.2d 74 (5th Cir.1990) (stating "In the purest sense, consent by suspects with knowledge that incriminating evidence will be discovered during a search would never be truly voluntary if self-interest were the primary focus of the voluntariness inquiry."). The ultimate duty to determine credibility and demeanor rests upon the trier of fact. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986).

■ Considering the totality of the circumstances surrounding Olvera's consent in light of the other relevant factors, we conclude that Olvera voluntarily consented to the search. Moore was the only officer present when Olvera's consent was requested, and he did not draw his weapon or physically threaten Olvera. Moore did not raise his voice or otherwise verbally abuse Olvera. In fact, Moore worked with Olvera for some time to reconcile the bill of lading with the truck's load. When Moore requested Olvera's consent, they were standing alongside a major highway and not in an isolated area where Olvera might feel threatened. Nor did Moore claim a right to search the vehicle beyond the commercial motor vehicle inspection, which Olvera's expert conceded was proper. Olvera was thirty-three years old and a professional truck driver fluent in English. Nothing in the record suggests that Olvera's intelligence, education, or physical condition affected the voluntariness of his consent. And Olvera does not challenge the court of appeals' holding that Moore had reasonable suspicion to detain him. *See* 970 S.W.2d at 665–66. On balance, the totality of the circumstances surrounding Olvera's consent supports the trial court's determination that Olvera voluntarily and unequivocally consented to the search.

Because it concluded that Olvera's consent was not voluntary, the court of appeals did not consider Olvera's points of error six and seven concerning the scope of Olvera's consent, or his contention that the evidence was factually insufficient to support the trial court's conclusion that the cash in Olvera's possession was contraband. Accordingly, we reverse the court

of appeals' judgment and remand to the court of appeals to allow it to consider those points.

Justice ABBOTT filed a concurring opinion.

Justice ABBOTT, concurring.

I concur in the Court's judgment and analysis, but I write separately to raise the question whether the Court's analysis is necessary in the first place. The analysis presupposes that the exclusionary rule applies. That is appropriate because neither of the parties in this case argued that the exclusionary rule should not apply. As such, it would be inappropriate for the Court to *sua sponte* decide the issue.

Both the Fourth Amendment to the United States Constitution and Article I, section 9 of the Texas Constitution prohibit unreasonable searches and seizures and require the exclusion of evidence obtained in violation of that prohibition in criminal trials. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Polk v. State,* 738 S.W.2d 274, 276 (Tex.Crim.App.1987); *see also* TEX.CODE CRIM. P. art. 38.23(a) (codifying and expanding the exclusionary rule). But forfeiture proceedings are generally *in rem* actions brought against the property, not the individual, and thus may be considered civil in nature. *See United States v. Ursery,* 518 U.S. 267, 274, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *State v. Rumfolo,* 545 S.W.2d 752, 754 (Tex.1976); *State v. Benavidez,* 365 S.W.2d 638, 640 (Tex.1963); *see also* TEX.CODE CRIM. P. art. 59.05(b). Texas' forfeiture statute specifically provides that forfeiture cases "shall proceed to trial in the same manner as in other *civil* cases." TEX.CODE CRIM. P. art. 59.05(b) (emphasis added).

The United States Supreme Court has held that evidence obtained in violation of the Fourth Amendment must be excluded in certain forfeiture proceedings. *See One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 702, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). In reaching that decision, the Court relied heavily on the fact that forfeiture of the claimant's automobile under the Pennsylvania statute was "clearly a penalty for the criminal offense" of illegal liquor possession or transportation. *Id.* at 701–02, 85 S.Ct. 1246. But the Texas forfeiture statute declares the Legislature's intent that "asset forfeiture is remedial in nature and not a form of punishment." TEX.CODE CRIM. P. art. 59.05(e). Moreover, the Court of Criminal Appeals has concluded that Chapter 59 is not so punitive that the Fifth Amendment's double jeopardy clause bars a criminal prosecution after a forfeiture proceeding. *See Fant v. State,* 931 S.W.2d 299, 307–08 (Tex.Crim.App.1996).

The foregoing authority leads me to question whether the exclusionary rule applies, and I urge future civil forfeiture litigants to raise the issue.