E. GRADY JOLLY, Circuit Judge,
dissenting:
Because I disagree with my colleagues’ interpretation of the Texas statute and their application of the Burger test, I respectfully dissent.
First, I cannot accept that section 644.103 authorizes random, discretionary stops of commercial veMcles: The words “stop” and “detain” are simply not interchangeable. In Fourth Amendment cases, we have routinely distinguished between the initial stop and the ensuing detention. The evident reason for this distinction is that the purpose of the initial stop determines the proper scope of the subsequent detention and investigation. See, e.g., Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325-26, 75 L.Ed.2d 229 (1983) (plurality opinion). Section 644.103 addresses this issue by specifying the scope of the officer’s investigative authority after he has lawfully stopped a commercial vehicle.[1]
*484 Second, I further depart from my colleagues because even if we assume that section 644.103 authorizes discretionary stops, the Texas statutory and regulatory scheme fails to provide “a constitutionally adequate substitute for a warrant.” New York v. Burger, 482 U.S. 691, 703, 107 S.Ct. 2636, 2644, 96 L.Ed.2d 601 (1987). This third prong of the Burger test requires that the regulations “limit the discretion of the inspecting officers” and thereby produce a measure of “certainty and regularity” in how the scheme is applied. Id. It is undisputed that the regulations limit the officer’s discretion after the stop, that is, the Texas regulations specify what may be inspected (e.g., the driver’s log book, the bill of lading, the condition of the tires). But the Burger-related issue presented here is whether the statute limits the officer’s discretion in choosing whom to stop. Instead of confronting this issue squarely, my colleagues rely on Officer Scales’ “background testimony” that he believed Fort’s truck had a flat tire. As they acknowledge, however, the Government never contended that such, a basis for the stop existed until Officer Scales testified at the suppression hearing. When Fort objected to this testimony, the Government promptly and expressly waived any argument based on reasonable suspicion of a traffic violation. Consequently, as the majority recognizes, there was no further development of this testimony; and these purely factual questions of whether Scales actually heard a sound indicative of a flat tire and whether it had any connection to the stop cannot be resolved by this appellate court. See United States v. Parker, 722 F.2d 179, 183 n. 2 (5th Cir.1983), overruled on other grounds, United States v. Hurtado, 905 F.2d 74 (5th Cir.1990)(en banc); see also Waganer v. Sea-Land Service, Inc., 486 F.2d 955, 959 (5th Cir.1973). Thus, I am unable to agree with my colleagues in their contradictory conclusion — that the officer’s testimony is sufficiently reliable to show that the stop was not arbitrary and thus “met constitutional muster” under Burger, while at the same time acknowledging that the testimony is so undeveloped that it cannot establish reasonable suspicion of a traffic violation.
For these reasons, I respectfully dissent.

. The only state court decision interpreting section 644.103 supports this narrow reading. See $217,590 in United States Currency v. State, 970 S.W.2d 660 (Tex.App.1998)(en banc), rev’d on other grounds, 18 S.W.3d 631 (Tex.2000). In $217,590, the Texas officer stopped a truck with a missing mud flap. Because the officer had observed a traffic *484 violation and had the authority to stop the truck, the question was whether the officer could perform a full commercial inspection under section 644.103 or whether he was limited to issuing a citation for the missing mud flap. The Texas appellate court explained that section 644.103 allows the officer to detain the truck for the purpose of conducting a full inspection. Id. at 664.