# IN THE SUPREME COURT OF TEXAS

════════════
No. 14-0692
════════════

THE STATE OF TEXAS, PETITIONER,

v.

ONE (1) 2004 LINCOLN NAVIGATOR, VIN # 5LMFU27RX4LJ28242,
RESPONDENT

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
══════════════════════════════════════════════

JUSTICE DEVINE, joined by CHIEF JUSTICE HECHT, JUSTICE JOHNSON, and JUSTICE LEHRMANN, concurring.

This case concerns the State's petition for civil forfeiture of Miguel Herrera's Lincoln Navigator, in which officers found cocaine. The trial court and court of appeals denied the State's request. __ S.W.3d __, __ (Tex. App.—Corpus Christi 2014). The court of appeals reasoned that the search of Herrera and his vehicle—leading to the discovery of narcotics—was unlawful, and therefore his vehicle could not lawfully be seized or subject to forfeiture. *Id.* at __. Because I conclude the officers had reasonable suspicion to stop Herrera and search the driver's area of his vehicle, I believe the court of appeals' judgment must be reversed. Accordingly, although I do not reach whether illegally obtained evidence should be excluded in civil forfeiture proceedings, I concur in the Court's judgment.

I

On November 3, 2010, Texas Department of Public Safety Agent Stephen West learned of an upcoming drug deal. A confidential informant told Agent West that a Hispanic male would drive a white SUV with shiny rims to Rack Daddy's, a local pool hall. According to the informant—a criminal defendant—the driver would be carrying drugs and was usually armed. Neither Agent West nor his fellow officers had relied on this informant before, and Agent West admitted criminal defendants frequently cooperate to obtain judicial leniency. Agent West testified he believed the informant because he witnessed the informant set up the drug deal:

Q. (By State): And were you listening as this information [about the upcoming drug deal] was relayed to you, when the confidential informant was speaking with the potential drug seller?

A. (By West): Yes, sir, we were.

Q. You were listening to this information?

A. Yes, sir. That's correct.

Q. Via what method?

A. Again, I don't recall at this point if it was made via phone or via text message, but it was confirmed with the cooperating source who was there in our presence.

Later, when asked whether he corroborated what the informant said and why he trusted the informant, Agent West replied:

Nothing was given to suggest otherwise. And when we're witness to them initiating a transaction, we go to the location, wait to see if the information matches up. In this case it did.

. . . .

2

Being present while the transaction is being discussed, meet here at this location for cocaine, and then I go over there and there this individual is in the vehicle waiting for the transaction to occur, in my mind it's corroborated.

As Agent West explained, the unfolding events all corroborated the informant's statements. Agent West and several other officers promptly drove to Rack Daddy's, taking the informant with them. There, a Hispanic man drove a white Lincoln Navigator with shiny rims into the Rack Daddy's parking lot. According to one officer, "the way that this vehicle parked in the parking lot was not normal with the normal motoring public. It pulled up next to the bar as if it was fixing to do a transaction." After the informant identified the driver of the Lincoln Navigator as the other party to the drug deal, four of the officers approached the vehicle. Although one officer saw the driver make "a quick motion down towards the floorboard," another was further behind and said he could not see any furtive movements.

When the officers reached the vehicle, they patted the driver—Miguel Herrera—down and searched the driver's area for weapons. Finding a gun in a compartment under the center console, the officers handcuffed Herrera, searched his criminal history, and arrested him for being a felon in possession of a firearm. They also took his vehicle, performed an inventory search, and discovered cocaine, pills, and a second loaded magazine for the gun.

Pursuant to the Texas civil forfeiture statute—Chapter 59 of the Texas Code of Criminal Procedure—the State filed a petition seeking forfeiture of Herrera's vehicle to the State. In response, Herrera moved to suppress all contraband and other evidence seized from his vehicle. The parties agreed to carry the suppression issue with the trial on the merits of the forfeiture. Accordingly, at a bench trial, the State presented its case-in-chief. But, after the State rested, Herrera asked the Court

3

to rule on its motion to suppress, arguing the evidence clearly established that the officers lacked reasonable suspicion to stop Herrera and search his vehicle.

The trial court granted Herrera's suppression motion and denied the State's forfeiture petition, reasoning that "law enforcement cannot seize property if their actions leading up [to] the seizure are illegal." The court's written findings emphasized the officers observed only innocent behavior and saw nothing corroborating the informant's predictions of criminal activity. For example, the court concluded the furtive movement seen by one officer "could just have easily been innocent activity." Although the trial court rejected the officers' interpretation and assessment of the facts, it did not question the credibility of their testimony regarding the facts.

The court of appeals affirmed the trial court's judgment. __ S.W.3d at __. It held the officers unlawfully searched Herrera's vehicle because they did not establish the informant's tip was reliable, and that under the Texas civil forfeiture statute, "law enforcement agents cannot seize property if their actions leading up to the seizure are illegal." *Id.* at __ (quoting *State v. Thirty Thousand Six Hundred Sixty Dollars & No/100*, 136 S.W.3d 392, 397 (Tex. App.—Corpus Christi 2004, pet. denied) (en banc)).

II

Chapter 59 of the Texas Code of Criminal Procedure subjects contraband to seizure and civil forfeiture. TEX. CODE CRIM. PROC. art. 59.02(a). "Contraband" broadly encompasses "property of any nature" that is "used or intended to be used in the commission of . . . any felony under" (among other statutes) the Texas Controlled Substances Act. *Id.* art. 59.01(2)(B)(i). A peace officer may seize contraband subject to forfeiture without a warrant in certain circumstances, such as when "the

4

seizure was incident to a lawful arrest, lawful search, or lawful search incident to arrest." *Id.* art. 59.03(b)(4). The State and Herrera dispute whether the officers' search of Herrera's vehicle was lawful. They also question (1) whether Herrera's vehicle would be subject to civil forfeiture if the officers' search of the vehicle was unlawful, and (2) whether the Fourth Amendment exclusionary rule requires illegally obtained evidence to be suppressed in a civil forfeiture proceeding.

I believe the search was lawful, and accordingly I need not address whether contraband that is illegally seized is subject to forfeiture, or whether illegally obtained evidence must be suppressed in a civil forfeiture proceeding. *See VanDevender v. Woods*, 222 S.W.3d 430, 433 (Tex. 2007) ("[T]he cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further.") (quoting *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring)). Importantly, the question of whether the officers' search of Herrera's vehicle was lawful is a civil question, even though it requires reference to authority routinely cited in the criminal context. *See* TEX. CODE CRIM. PROC. art. 59.05(a), (b), (e) (confirming forfeiture proceedings are civil in nature); *see also In re H.V.*, 252 S.W.3d 319, 323–30 (Tex. 2008) (discussing *Miranda* and other authorities routinely cited in the criminal context in a juvenile case).

The trial court's decision to exclude evidence obtained as a result of a search is reviewed for an abuse of discretion. *State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 633 (Tex. 2000). We defer to the trial court's fact findings if evidence supports them. *Id.* at 633–34. If so, then we must decide whether the court correctly applied the law to the facts. *Id.* at 634.

The Fourth Amendment requires that officers possess reasonable suspicion before temporarily detaining someone without a warrant. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). The officer need not have probable cause, which requires the officer to "be able to pinpoint a particular penal infraction." *Id.* at 916. Reasonable suspicion instead only requires that an officer have "specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* at 914. This is an objective determination, which disregards the officers' subjective motives and requires an examination of the totality of the circumstances. *Id.* Thus, even actions that are innocent in and of themselves may create reasonable suspicion: "there may be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion." *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

Just as an officer may detain a person based on reasonable suspicion that "criminal activity may be afoot," so too may the officer frisk the person for weapons based on a reasonable belief that the person "may be armed and presently dangerous." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Such a search protects officers and those nearby, *id.* at 29, and may extend to the passenger area of a vehicle, *Michigan v. Long*, 463 U.S. 1032, 1049–50 (1983).

On the record before us, the totality of the circumstances supports the officers' reasonable suspicion to frisk Herrera and search the passenger area of his vehicle for weapons. The informant accurately stated that a white SUV with shiny rims, driven by a Hispanic male, would arrive at Rack Daddy's that night, and that the driver would be carrying drugs and was usually armed. While a

6

criminal defendant, like the informant, who is making a *quid pro quo* trade does not enjoy a presumption of honesty and accuracy, a "tip" from the criminal defendant may nonetheless be coupled with other facts to conclude the "informant is credible or that his information is reliable." *State v. Duarte*, 389 S.W.3d 349, 356–58 (Tex. Crim. App. 2012). These facts need not be known by every officer; it is the cumulative information possessed by the cooperating officers that determines whether reasonable suspicion exists. *Derichsweiler*, 348 S.W.3d at 914.

Here, the record shows the officers possessed such facts. Agent West trusted the informant because the informant set up the drug deal in Agent West's presence. Although the court of appeals concluded Agent West merely testified "the source gave the officers information about Herrera when the source was in the presence of the police officers," __ S.W.3d at __ n.10, the record—as discussed above—clearly shows the source set up the transaction in Agent West's presence. Even the trial court understood that Agent West was present, stating orally (though not in its written findings) that:

> The evidence the Court heard from West was that he was there when there were some conversations happening between the confidential source and the person who was going to show up.
>
> . . . .
>
> . . . I don't know what you're talking about, monitoring phone calls and text messages and all that. I mean, if there was a mention of text messages, it must have been brief. But the gist of what the Court received was West was present when conversations occurred. I don't recall whether it was by phone or text.

Agent West's presence as the deal was set up, regardless of the level of detail Agent West observed, made it reasonable for him to credit the informant's statements.

Indeed, the unfolding events all corroborated the informant's statements. That night, the officers watched a Hispanic male drive a white SUV with shiny rims into the Rack Daddy's parking lot, and the informant identified the driver as the person who was to show up with drugs. The driver parked in an area known for drug sales, and one officer saw him make a furtive movement toward the floorboard as they approached. Accordingly, the officers reasonably concluded that Herrera was, had been, or soon would be "engaged in criminal activity." *Derichsweiler*, 348 S.W.3d at 914. The officers had reasonable suspicion to temporarily detain Herrera.

Furthermore, the informant apprised the officers that Herrera would probably be armed. Because "weapons and violence are frequently associated with drug transactions, the officers reasonably believed that the individual[] with whom they were dealing [was] armed and dangerous." *Carmouche v. State*, 10 S.W.3d 323, 330 (Tex. Crim. App. 2000) (alterations in original) (quoting *United States v. Brown*, 913 F.2d 570, 572 (8th Cir. 1990)). For their own safety, they were justified in frisking Herrera and searching the passenger area of the vehicle for weapons.

The parties do not dispute that if the officers' search of the passenger area of Herrera's vehicle for his gun was lawful, then the subsequent arrest of Herrera and inventory search of his vehicle were also lawful. Based on the record before us, the contraband and evidence found in Herrera's Lincoln Navigator were lawfully obtained.

\* \* \*

The trial court abused its discretion by granting Herrera's motion to suppress the contraband and other evidence found in his vehicle and denying the State's forfeiture petition. The contraband

and other evidence were legally obtained.  Accordingly, I concur in the Court's judgment remanding the case to the trial court for further proceedings.

_____

John P. Devine
Justice

Opinion delivered: June 10, 2016