**Affirm and Opinion Filed September 3, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00484-CV**

**IN THE MATTER OF THE MARRIAGE OF DAWN WEEKS SPALDING AND STEPHEN G. SPALDING AND IN THE INTEREST OF D.S., A CHILD**

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-16-14244**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Garcia[1]
Opinion by Justice Pedersen, III

After a bifurcation in final trial from the other issues, Stephen Spalding appeals the trial court's judgment in favor of Dawn Weeks Spalding, which found that a post-nuptial Partition and Exchange Agreement (PEA) was not valid or enforceable. In five issues, Stephen asserts the trial court abused its discretion in (i) excluding expert testimony from a handwriting expert and (ii) finding the PEA was not valid or enforceable. We affirm the judgment of the trial court.

---

[1] The Honorable Justice Dennise Garcia succeeded the Honorable Bill Whitehill, a member of the original panel. Justice Garcia joins this opinion after having reviewed the briefs and the record before the Court.

# I. BACKGROUND

## A. Marital Property Agreements

Before the parties were married, Stephen and Dawn executed a Premarital Agreement in the spring of 2000. One purpose of this Premarital Agreement was to "help [Dawn] and at the same time keep [Stephen] protected from [Dawn's] IRS debt." Regarding community property, the Premarital Agreement provides: "It is the Parties' intent and desire that a community property estate will be created during their marriage." The Premarital Agreement further enumerated six categories of assets, which were to constitute the community estate. Stephen and Dawn initialed each page of the Premarital Agreement. They both signed the Premarital Agreement. Separate notaries notarized each of their signatures on the Premarital Agreement.

Stephen and Dawn were married on April 8, 2000. In May 2000, they executed a Property Agreement Between Spouses, which ratified their Premarital Agreement and did not otherwise disturb their prior agreements regarding the community estate. As with their Premarital Agreement, Stephen and Dawn (i) initialed each page and (ii) signed the Property Agreement Between Spouses. Separate notaries notarized each of the signatures on the Property Agreement Between Spouses.

A dispute arose in 2009 between Stephen and Dawn regarding finances. In response, Stephen hired counsel to draft the PEA, which was to "partition or exchange that community property in order for each party, following the execution of [the PEA], to hold and possess his or her share of the property as his or her sole

and separate property." The PEA included several schedules, which designated the parties' prior separate property and partitioned the community property as exchanged separate property. The PEA further provided that "no community estate will arise or be created during the remainder of their marriage." Stephen initialed each page and signed the PEA, and a notary notarized his signature.

## B. Divorce Proceeding

Dawn filed for divorce in July 2016 and sought to enforce the Premarital Agreement. Stephen answered, counterpetitioned for divorce, and sought to enforce both the Premarital Agreement and the PEA. Thereafter, Dawn asserted fraud, illegality, and unauthorized agent affirmative defenses to Stephen's claim that the PEA was valid and enforceable. Dawn pled that Stephen forged her name to the PEA and moved to exclude his handwriting expert witness, Curt Baggett.

On May 3, 2018, the trial court began final trial in this proceeding. As (i) the parties had resolved the suit affecting parent-child relationship issues at mediation and (ii) neither party disputed the validity or enforceability of the spring 2000 Premarital Agreement or the Property Agreement Between Spouses, the remaining issue for the trial court was whether the PEA was valid and enforceable. Stephen, Dawn, and Baggett, testified during final trial.

Stephen testified that he signed the PEA first and that he had it notarized on March 2, 2009. He testified he then met Dawn for lunch and witnessed Dawn sign the PEA in his car. He testified Dawn was angry and signed the entire PEA over the

–3–

course of ten minutes. Stephen denied any forgery. Dawn testified she did not initial the pages or otherwise sign the PEA. Dawn testified that in 2009 she and Stephen discussed a partition and exchange agreement, but she requested changes to the draft partition and exchange agreement:

> [DAWN'S COUNSEL]: Do you recall what changes you requested?
> [DAWN]: Yes, I wanted to be put on the deed for our properties, and also I wanted a morals clause put into the agreement because he was constantly gone from the house, and he was usually at a bar but mostly strip clubs.

The PEA contains neither an agreement for Dawn to be placed onto any property, nor joint ownership of real property, nor a morals clause. Dawn testified to an incident in which Stephen requested she sign the PEA in his car. Dawn testified she refused to sign the PEA at that time and never signed the PEA.

The trial court heard Baggett's deposition testimony, and he appeared to testify in-person during trial. Baggett testified as to his qualifications, prior experience, method, and expert opinion that Dawn had signed the PEA. Dawn's counsel took Baggett on voir dire and objected to his expert testimony and opinion on the bases of his qualifications, credibility, and reliability of his testimony. The trial court granted Dawn's motion to exclude Baggett's expert testimony:

> [THE TRIAL COURT]: I am going to grant the challenge and sustain [Dawn's] objection to [Baggett's] being qualified as an expert witness and strike his testimony.

Thereafter, the trial court entered the following order in its January 29, 2019 Order on Bifurcated Trial:

–4–

*(5) Petitioner's Motion to Exclude Testimony and Report of Curt Baggett*

The Court finds, and IT IS THEREFORE ORDERED, that the expert testimony of Curt Baggett is excluded.

The trial court entered the following order in its January 29, 2019 Final Order

Regarding Validity and Enforceability of Partition And Exchange Agreement:

***Finding and Order on Validity and Enforceability of Partition and Exchange Agreement***

The Court finds, and IT IS THEREFORE ORDERED, the Partition and Exchange agreement relied upon by Respondent is not valid or enforceable for the reason that Petitioner did not sign the Partition and Exchange agreement.

This appeal followed.

## II.    ISSUES RAISED

Appellant raises five issues on appeal:

1.      The trial court erred and abused its discretion in excluding the testimony of [Stephen]'s expert Curtis Baggett based on his alleged lack of qualifications. The exclusion of his testimony was reversible error because it probably caused the rendition of an improper judgment.

2.      Alternatively, the trial court erred and abused its discretion in excluding the testimony of [Stephen]'s expert Curtis Baggett based on the alleged lack of reliability of his opinions. The exclusion of his testimony was reversible error because it probably caused the rendition of an improper judgment.

3.      The trial court erred in ordering that the Partition and Exchange Agreement was not valid or enforceable based on the trial court's finding that [Dawn] did not sign this agreement.

4.      The trial court erred finding that [Dawn] did not sign the Partition and Exchange Agreement.

5.     Alternatively, if the trial court's order that the Partition and Exchange Agreement was not valid or enforceable was based on the defenses of involuntary signature or unconscionability, this constituted error because these defenses were not properly pled by [Dawn].

### III.     STANDARDS OF REVIEW

### A. Admissibility of Expert Testimony

We review rulings on the admissibility of expert testimony for an abuse of discretion. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Expert testimony is admissible if it will assist the trier of fact to understand the evidence or to determine a fact in issue. TEX. R. EVID. 702.[2]

In applying the abuse of discretion standard, reviewing courts defer to the trial court's factual determinations; a reviewing court does not engage in its own factual review but decides whether the record supports the trial court's resolution of factual matters. *State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 633–34 (Tex. 2000). A reviewing court determines only whether the trial court properly applied the law to the facts in reaching its legal conclusion. *Id.*

---

[2] "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702.

## B. Sufficiency of the Evidence

The abuse of discretion standard in a family law case overlaps the traditional sufficiency standard of review. *In re S.M.V.*, 287 S.W.3d 435, 446 (Tex. App.—Dallas 2009, no pet.). However, under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error; instead, legal and factual sufficiency are incorporated into the abuse of discretion standard as relevant factors in assessing whether a trial court abused its discretion. *Id.* In applying the abuse of discretion standard, we engage in a two-pronged analysis: (i) whether the trial court had sufficient evidence upon which to exercise its discretion and (ii) whether the trial court erred in applying its discretion. *See Vardilos v. Vardilos*, 219 S.W.3d 920, 921 (Tex. App.—Dallas 2007, no pet.).

Here, Stephen's briefing does not specify whether he challenges the legal sufficiency or the factual sufficiency of the evidence that Dawn signed the agreement. When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which the party had the burden of proof, it must show that the evidence establishes as a matter of law all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). When addressing a legal sufficiency challenge, we view the evidence in the light most favorable to the challenged finding—crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

–7–

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

"When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding." *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.) (citing *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). "We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust." *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Id.* "As long as the evidence falls 'within the zone of reasonable disagreement,' we will not substitute our judgment for that of the fact-finder." *Id.* (quoting *City of Keller*, 168 S.W.3d at 822). In conducting a factual sufficiency review, we should detail the evidence relevant to the issue in consideration and clearly state why the finding is factually insufficient or is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019).

## IV.   DISCUSSION

**Issue One: The trial court erred and abused its discretion in excluding the testimony of [Stephen]'s expert Curtis Baggett based on his alleged lack of qualifications.**

Texas Rule of Evidence 702 contains two hurdles, which must be overcome before the expert testimony will be admissible. *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 94 (Tex. App.—Dallas 1995, writ denied). "Proponents of expert testimony must establish: (1) that scientific, technical, or other specialized knowledge will aid the trier of fact; and (2) the expert witness is qualified to testify on the subject." *Id.* As the trial court excluded the expert testimony in question under the second prong, we focus on whether the expert was qualified to testify about handwriting authentication.

In deciding if an expert is qualified, trial courts "must ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 499 (Tex. 2001) (quoting *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 719 (Tex. 1998)). General experience in a specialized field does not qualify a witness as an expert. *Gammill,* 972 S.W.2d at 719.

Stephen asserts the trial court erred in (i) its finding that Baggett was not qualified to testify as an expert and (ii) its order excluding Baggett's expert testimony. Evidence regarding Baggett's qualifications is found in the record within Baggett's deposition, his testimony before the trial court, his curriculum vitae, his

expert report, and several documents relating to Baggett's expert testimony from other cases.

In his deposition, Baggett testified he had almost thirty years of experience as a forensic document examiner and handwriting expert. He explained that he trained under Dr. Ray Walker for ten years and completed an apprenticeship with Dr. Walker after two years. Baggett testified that he "taught for five years at Handwriting University" and "was dean of the school there at the Handwriting University for five years." Baggett taught two-hour courses once a week and also participated in annual conventions at which he showed students how to use scientific instruments in examining documents. Baggett explained he participated in over 6,000 cases as an "expert in the USA who has examined documents and/or testified in every state of the USA and at least a dozen foreign countries." Baggett testified he published four or five papers, including a "book for the State of Colorado on how to spot a forgery." Baggett's curriculum vitae lists his education and training as follows:

> U.S. Army, Military Police Officer's School; B.A. and M.Ed., McNeese State University, Lake Charles, Louisiana; and post-graduate studies at the University of Houston, Houston, Texas.

The curriculum vitae explains Baggett "has a certificate of completion from the American Institute of Applied Science." The record includes a "summary of cases," which lists numerous court cases in which Baggett had participated or appeared as an expert.

During trial, Baggett testified that his degrees include a B.A. in speech education and a M.Ed. in counseling and guidance from McNeese State University in Lake Charles. Baggett testified he took postgraduate courses in psychology at the University of Houston. Apart from his apprenticeship with Dr. Walker, Baggett explained that his education and training in document examination involved an introductory class on document examination, which he took while in the U.S. Army Military Police Officer's School. Baggett testified he did not perform document examination during his time in service with the U.S. Army.

Baggett testified he was not certified by (i) the American Board of Forensic Document Examiners (ABFDE), (ii) the Board of Forensic Document Examiners, (iii) the National Association of Document Examiners, (iv) the American Society of Questioned Document Examiners, or (v) the Association of Forensic Document Examiners. Baggett testified his son operated the Handwriting University at which he served as a teacher and a dean. The record contains testimony from Baggett that the Handwriting University has no accreditations. Neither institution that certified Baggett's expertise remains in business.

The record contains an opinion from our Court in which we addressed an issue with ancillary relation to Baggett's expertise:

> *Brown contends that the trial court erred in overruling his objection to the prosecutor's argument during the guilt or innocence phase of the trial in which he called defense witness Curtis Baggett a "charlatan." Baggett testified that he was a psychologist, hypnotherapist, psychotherapist, and graphologist, and that he had been designated by*

*the court as an expert witness in this case.* The court noted that Baggett had not been properly qualified as an expert, and Baggett retracted his testimony that the court had designated him as an expert in this case. *Baggett testified that he is not licensed as a psychologist or a psychotherapist and has not practiced therapy full-time for fifteen years, although he still conducts occasional weight loss and stress management seminars. Baggett works primarily in real estate and financial planning. A "charlatan" is defined as "a pretender to medical knowledge: a quack." Webster's Third New International Dictionary 378 (1993). We conclude that the prosecutor's argument that Baggett was a charlatan was proper as a reasonable deduction from the evidence. See Broussard v. State,* 910 S.W.2d 952, 959 (Tex. Crim. App. 1995), *cert. denied,* 519 U.S. 826, 117 S.Ct. 87, 136 L.Ed.2d 44 (1996).

*Brown v. State*, No. 05-97-00289-CR, 1999 WL 61858, at *8 (Tex. App.—Dallas Feb. 9, 1999, no pet.) (emphasis added). The record further contains an order from *United States of America v. Revels* from the United States District Court, Eastern District of Tennessee, Chattanooga Division, in which the federal district court discussed Baggett's qualifications and credibility in the areas of document examination and handwriting analysis in 2012. The federal district court excluded Baggett's testimony, concluding "Mr. Baggett lacks the necessary qualifications to testify at Defendant's sentencing hearing as an expert in the fields of document examination and handwriting analysis."[3]

---

[3] The memorandum order stated Baggett had "questionable training experience" under Walker and:

Mr. Baggett admitted that his undergraduate and graduate studies were of no particular relevance to his training as a document examiner, and that he could not recall whether his Military Police Officer's School training addressed forensic document examination techniques.

. . . .

A trial court does not abuse its discretion when it makes its decision on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Burns v. Burns*, 116 S.W.3d 916, 921 (Tex. App.—Dallas 2003, no pet.). A trial court does not abuse its discretion as long as some evidence of substantive and probative character exists to support the trial court's decision. *In re S.M.V.*, 287 S.W.3d at 450. Here, the record contains conflicting evidence of substantive and probative character to support the trial court's decision. In light of the record before us, we cannot conclude the trial court abused its discretion in (i) its finding that Baggett was not qualified to testify as an expert and (ii) its order excluding Baggett's expert testimony. We overrule Stephen's first issue. Consequently, we do not reach Stephen's second issue. *See* TEX. R. APP. P. 47.1.

**Issues Three and Four: The Partition and Exchange Agreement**

Because Stephen's third and fourth issues concern the Partition and Exchange Agreement, we address them jointly. We understand these issues to challenge the sufficiency of the evidence to support the trial court's finding that Dawn did not sign the agreement.

---

The only professional organization in the field of document examination that offers certification is the ABFDE. Neither Mr. Baggett nor his mentor Ray Walker is an ABFDE member.

. . . .

[O]f particular concern to this Court, is the fact that several other courts have determined, inter alia, Mr. Baggett is not qualified to testify.

. . . .

Even under a "minimum indicia-of-reliability standard," this Court concludes that the issues raised with respect to Mr. Baggett's qualifications call into doubt the reliability of any testimony that he would offer.

Texas Family Code § 4.102 permits partition or exchange of community property:

> At any time, the spouses may partition or exchange between themselves all or part of their community property, then existing or to be acquired, as the spouses may desire. Property or a property interest transferred to a spouse by a partition or exchange agreement becomes that spouse's separate property. The partition or exchange of property may also provide that future earnings and income arising from the transferred property shall be the separate property of the owning spouse.

TEX. FAM. CODE ANN. § 4.102. Texas Family Code § 4.105 provides, in part, that "[a] partition or exchange agreement is not enforceable if the party against whom enforcement is requested proves that: the party did not sign the agreement voluntarily." *Id.* § 4.105(a)(1).

As discussed above, Stephen testified (i) he signed the PEA in the presence of a notary, (ii) he had the PEA notarized as to his signature, and (iii) he then presented the PEA to Dawn in his car, where he watched Dawn sign the PEA. Dawn testified she never signed the PEA. Although the earlier Premarital Agreement and Property Agreement Between Spouses had notarizations for both Stephen's and Dawn's signatures, Stephen testified he did not get Dawn's alleged signature on the PEA notarized because his understanding was "the whole [PEA] was notarized" when his signature was notarized—assuming "once it's notarized it's notarized." Stephen testified he worked in insurance and had documents notarized "all the time."[4] The

---

[4] When asked about notarization in his insurance work, Stephen testified:

PEA in the record shows varied initials of "DWS" on each page, above a line stating "Her initials." The PEA contains a handwritten "Jay K. Stevenson" on a line that indicates the "attorney representing Wife." The PEA contains a purported signature of Dawn.

The record further includes correspondence between Stephen and Dawn from late February 2009, in which Dawn refuses to sign the PEA and alleges Stephen attempted to bully her into signing the PEA. During the lunch meeting at which Stephen testified Dawn signed the PEA, Dawn testified:

> [DAWN]: I remember being excited by the fact that he had called me and asked me to go to lunch, because it was pretty rare. So I went downtown and met him at his office and we drove in his vehicle to lunch.
>
> At lunch he proceeded to tell me he was going to have me arrested for fraud for the credit card issues we were having if I did not sign this document. He had the document in the car. When we left lunch and went back into the car, he was trying to get me to sign it in the car. I refused to sign it, I got out of the truck, and I threw the document back at him.
>
> He presented it to me at another time later than that and asked me to sign it, left it at home. He went out to a Dallas Stars game. I took out the page where the signatures were requested and I literally went in the backyard and burned them because I was not happy.

---

[DAWN'S COUNSEL]: You don't have Deanna notarize documents for signatures that people haven't signed yet or do you have her notarize blank documents?

[STEPHEN]: Honestly, we would take documents in and have her notarize them, and I assumed that meant they were—it was done. I didn't know the formal procedure. If you want me to admit that we did some—made some errors and didn't follow the proper notarization process both on this and on some insurance documents, we are probably guilty. We didn't know the proper procedure.

So I never signed this document. I would have never agreed to sign this document. It's ridiculous.

The record further showed neither Stephen nor Dawn could explain the handwritten inclusion on the PEA of the name "Jay K. Stevenson" as the attorney representing Dawn on the PEA. Stephen testified he did not write the name and did not know who wrote it into the PEA. Dawn testified she did not write it and had not hired Jay K. Stevenson to represent her on the PEA or any matter since 2000.

In light of the record before us, we must conclude the trial court had more than a scintilla of evidence to support its finding that the PEA was not valid or enforceable. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 48. We must further conclude the evidence fell within the zone of reasonable disagreement such that the trial court's finding was not against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Windrum*, 581 S.W.3d at 781. Thus, the trial court had sufficient evidence upon which to exercise its discretion. *See Vardilos*, 219 S.W.3d at 921. The trial court did not abuse its discretion when it concluded the PEA was not valid or enforceable, because the evidence was sufficient to find that Dawn did not sign the PEA. *See id.* We overrule Stephen's third and fourth issues. We do not reach Stephen's fifth issue. *See* TEX. R. APP. P. 47.1.[5]

---

[5] Regarding Stephen's fifth issue, we note that Dawn did not raise any pleadings or arguments regarding unconscionability or involuntary signature. We pretermit any further discussion on that issue.

–16–

## V. CONCLUSION

Having overruled Stephen's first, third, and fourth issues, we affirm the judgment of the trial court.

190484f.p05

/Bill Pedersen, III//
_____
BILL PEDERSEN, III
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE MATTER OF THE
MARRIAGE OF DAWN WEEKS
SPALDING AND STEPHEN G.
SPALDING AND IN THE
INTEREST OF D.S., A CHILD

On Appeal from the 301st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-16-14244.
Opinion delivered by Justice
Pedersen, III. Justices Reichek and
Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Dawn Weeks Spalding recover her costs of this appeal from appellant Stephen G. Spalding.

Judgment entered this 3rd day of September, 2021.